COMMONWEALTH vs. JOSEPH E. DRAYTON.

Suffolk. January 4, 1982. — April 30, 1982.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law*, Presumptions and burden of proof, Assistance of
   counsel. *Practice, Criminal*, Assistance of counsel, Continuance,
   Instructions to jury, Presumptions and burden of proof, Indictment,
   Argument by prosecutor. *Evidence*, Relevancy and materiality, Ex-
   pert opinion, Other offense.

The defendant in a criminal case was not deprived of the effective assist-
   ance of counsel by counsel's failure to file a motion to suppress identifi-
   cation testimony, by counsel's stipulation concerning a pretrial photo-
   graphic identification, and by counsel's failure to move for a mistrial
   and to request that the defendant be permitted to sit at the counsel
   table rather than in the prisoners' dock. [41-44]
The judge in a criminal case did not abuse his discretion in denying a re-
   quest for a continuance by the defendant where counsel had stated
   that he was prepared for trial. [45]
The judge in a criminal trial did not err by failing to use the words "pre-
   sumption of innocence" in his instructions to the jury where he had
   emphasized the Commonwealth's burden of proof and the jury's re-
   sponsibility to decide the case on the evidence alone. [45-47]
There was no merit to the contention of a defendant in a criminal case
   that the traditional wording of the indictments against him under-
   mined the presumption of innocence. [47]
At the trial of a murder indictment there was no error in the admission in
   evidence of a wooden box with the defendant's fingerprints which was
   found at the scene of an incident in which shots were fired from the
   same gun as had been used in the murder. [47-49]
Where an expert witness had testified at a murder trial that fingerprints
   found on a wooden box and prints taken from the defendant showed
   twelve points of similarity and that the fingerprints on the box were
   those of the defendant, any error in permitting the witness to state his
   opinion of the statistical probability that prints with twelve points of
   similarity could be made by two different people was harmless.
   [49-51]
At the trial of a murder indictment there was no error in permitting a wit-
   ness to testify that he had seen the defendant with a gun matching the

description of the murder weapon even though the witness was uncertain when he had seen the gun. [51-52]

There was no merit to the contention of a defendant in a criminal case that the prosecutor in his closing argument improperly expressed his "personal opinions." [52-53]

At a murder trial a reference in the judge's instruction to a "presumption" of malice did not improperly relieve the Commonwealth of its burden of proof where the judge gave thorough instructions on the Commonwealth's burden of proof and where malice was not a contested issue. [53]


INDICTMENTS found and returned in the Superior Court on April 12, 1974.

The cases were tried before *McGuire, J.*

*Conrad W. Fisher* for the defendant.

*Philip T. Beauchesne,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.   After a trial by jury, the defendant was convicted of murder in the first degree, two charges of armed robbery, armed assault with intent to rob, and two charges of assault and battery by means of a dangerous weapon.   He filed assignments of error, and later filed motions in this court for a new trial and for permission to expand his assignments of error.   Pursuant to G. L. c. 278, § 33E, we remitted the defendant's motions to the trial judge, who denied the motion for a new trial.   The defendant filed notice of appeal, and the case was reactivated on our docket.[1]

The murder victim was Maurice Dean.   On March 1, 1974, Dean attended a performance in the company of Thomas Valengavich and Robert Applegate.   Upon leaving, Dean and his companions were stopped on the street by three young men.   One of the young men produced a silver colored handgun, and demanded money.   After collecting the victims' money, he shot each of them.   The three young men then fled, and Dean died six hours later.

[1] No action was taken on the motion to expand assignments of error. The defendant has presented the expanded version in his brief, and we shall address all of his arguments. See G. L. c. 278, § 33E.

The principal issue at trial was the identity of the killer. The Commonwealth's evidence linked the defendant to the crime in several ways. Applegate and Valengavich identified the defendant in court as the killer. A taxi driver and a passenger in the taxi testified that two men had hailed the taxi near the time and place of the crime, and the passenger identified the defendant as one of these men. On leaving the taxi, the man later identified as the defendant fired a silver handgun through the window of the taxi. On March 11, less than two weeks after the murder, a wooden box bearing the defendant's fingerprints was found at the scene of a shooting. The same gun used to kill Dean was used in this shooting. Finally, the murder gun was found in the defendant's possession in New York on March 17.

The defendant raises a number of arguments on appeal. None is meritorious, and we affirm the defendant's convictions.

1. *Effective Assistance of Counsel.*

The standard we have established for testing the constitutional sufficiency of legal representation by defense counsel has two branches. To obtain reversal for ineffective assistance of counsel, the defendant must show that (1) counsel's services fell "measurably below that which might be expected from an ordinary fallible lawyer," and (2) counsel's inadequacy substantially prejudiced the defendant's case. *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). *Commonwealth* v. *Rondeau,* 378 Mass. 408, 412 (1979). Counsel's tactical judgments, in particular, will not lead to reversal unless they appear "manifestly unreasonable." *Commonwealth* v. *Mercado,* 383 Mass. 520, 527 (1981), quoting from *Commonwealth* v. *Adams,* 374 Mass. 722, 728 (1978).

The defendant raised the question of ineffective assistance of counsel before the Superior Court judge in support of his motion for a new trial. The judge rejected the claim, stating that "[t]he transcript reflects a capable representation." Although the defendant has since enlarged his list of alleged errors committed by counsel, we give weight to the

conclusion of the judge, who observed counsel's conduct throughout the trial.

The defendant points to four acts or omissions by counsel as evidence of inadequate representation, beginning with counsel's decision not to file a pretrial motion to suppress identification testimony. A motion to suppress stood little chance of success. The principal identification witnesses were Applegate and Valengavich (the surviving victims) and the taxicab passenger who identified the defendant as the man who had hailed a taxi near the scene of the crime and had later fired a shot through the taxi's window. Each of these witnesses had failed to identify the defendant in photo identification procedures prior to trial.[2] Each witness, however, had had ample opportunity to observe the perpetrator of the crimes he described. The witnesses' failure to select photographs of the defendant merely detracted from their credibility in court, and the judge was not likely to remove the identification evidence from the jury's consideration on this ground. See *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 409-410 (1978); *Commonwealth* v. *Jones,* 375 Mass. 349, 351-352 (1978). Nor was there any indication that the photo identification procedures had been suggestive, so as to taint the in-court identifications. See *Commonwealth* v. *Williams,* 378 Mass. 217, 239 (1979).

The decision whether to request a voir dire or move to suppress was a tactical one, and defense counsel may have determined that the chance of success on a motion to suppress was too slight to justify the risks of affording the witnesses an opportunity to rehearse their testimony at a suppression hearing. *Commonwealth* v. *Moffett,* 383 Mass. 201, 214 n.7 (1981). *Commonwealth* v. *Williams, supra* at 239-240. Moreover, having chosen to attack the identification testimony by cross-examination, counsel made diligent inquiries into the witnesses' powers of observation, and their inability to identify the defendant from photographs.

[2] Although Applegate may have identified a photograph of the defendant on one occasion, he failed to do so on other occasions.

See *Commonwealth* v. *Moffett, supra* at 214. In all, his treatment of the identification evidence was reasonable.

Next, the defendant complains that counsel should not have entered into a stipulation concerning a pretrial photo identification by the witness Applegate. Before Applegate testified, the prosecuting attorney informed defense counsel that neither Applegate nor Valengavich had made a photographic identification of the defendant. On cross-examination, however, Applegate stated that he had identified the defendant's photograph on at least one occasion, although he had failed to do so on other occasions. This testimony appears to have been a surprise to the prosecuting attorney. Upon investigation, the prosecuting attorney was unable to locate any officer who could substantiate the identification. Counsel then agreed to a stipulation that the jury should disregard Applegate's assertion that he had identified a photograph of the defendant. The stipulation was read to the jury. The defendant now argues that the better course would have been to move for a voir dire or a mistrial. He does not specify, however, what benefits might have been accomplished by these motions. The officers who administered the photographic identification procedure were unavailable. There was no indication that the prosecuting attorney concealed the prior identification, and the witnesses' testimony indicated that the photo identification procedure was fair. Even if a mistrial had been a viable possibility, counsel may have preferred not to take the chance that the Commonwealth would be able to substantiate the photo identification and introduce it at a subsequent trial.

The defendant also asserts that counsel should have moved for a mistrial when a witness stated that he had seen the defendant wear a particular type of coat "[w]hen he was in Billerica." The defendant apparently believes that this response prejudiced him in the minds of the jury by suggesting that he had been confined in the Billerica house of correction on other criminal charges. The reference to Billerica was not called for by the prosecutor's question, and the judge

immediately struck the response on his own motion. Defense counsel's determination not to propose a mistrial in these circumstances was reasonable.

Finally, the defendant criticizes counsel for failing to request that the defendant be permitted to sit at the counsel table rather than in the prisoners' dock, particularly in light of the prominent role that in-court identifications would play at trial. Since the defendant was tried, we have held that a judge must grant a defendant's request to sit at the counsel table unless special circumstances require that he be seated in the prisoners' dock. *Commonwealth v. Moore,* 379 Mass. 106, 107-111 (1979). See *Bumpus v. Gunter,* 635 F.2d 907, 914-915 (1st Cir. 1980), cert. denied, 450 U.S. 1003 (1981). At the time of this trial, however, use of the dock was customary. *Commonwealth v. Walker,* 370 Mass. 548, 573, cert. denied, 429 U.S. 943 (1976), habeas corpus denied sub nom. *Walker v. Butterworth,* 457 F. Supp. 1233 (D. Mass. 1978), rev'd 599 F.2d 1074 (1st Cir.), cert. denied, 444 U.S. 937 (1979). The crimes charged were violent. The judge instructed the jurors to draw no inference from the fact that the defendant was seated in the dock, and counsel, in cross-examining the identification witnesses, brought out the possibility that the defendant's location in the courtroom facilitated their identification of him as the killer. Counsel's failure to request an exception to general custom was not a serious lapse of duty.[3]

Certainly, none of these acts or omissions falls "measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth v. Saferian,* 366 Mass. 89, 96 (1974). We agree with the judge below that the record shows a competent performance by defense counsel.

---

[3] The defendant also contends that the judge should have removed the defendant from the dock on his motion. Our holding in *Commonwealth v. Moore,* 379 Mass. 106, 111 (1979), that judges must permit defendants to sit at the counsel table in the absence of special circumstances, applied to future cases only. *Commonwealth v. Young,* 382 Mass. 448, 461-462 (1981). At the time of the defendant's trial, the seating of defendants was left to the discretion of the judge. *Id.* at 461. In the circumstances described in the text above, there was no abuse of discretion.

2. *Denial of Continuance.*

At the beginning of the trial, the defendant moved for a continuance on the ground that he was not adequately prepared for trial. The judge explored the matter by questioning both the defendant and his counsel. It emerged that the defendant's lack of "preparation" arose from a feeling of dissatisfaction with counsel. Counsel himself stated that he was fully prepared to proceed, had gone over the case with the defendant, and had furnished the defendant with documents he felt were material to the defense. We have already reviewed, with approval, the performance of counsel. When the defendant is represented by counsel and counsel is prepared to go forward, the disposition of a motion for continuance is in the discretion of the judge. *Commonwealth v. Watkins,* 375 Mass. 472, 490 (1978). See *Commonwealth v. O'Brien,* 380 Mass. 719, 721-723 (1980). Contrast *Commonwealth v. Cavanaugh,* 371 Mass. 46, 50-57 (1976). The judge's decision here was a reasonable one.

3. *The Presumption of Innocence.*

The judge did not instruct the jury, in so many words, that the defendant was protected by a "presumption of innocence." Instead, he explained with care the attitude with which the jury should approach the case,[4] the role of indictments and of the grand jury,[5] and the Commonwealth's responsibility to prove the crimes charged by competent evi-

---

[4] "[T]he fact that there are several indictments, is not in any way evidence against [the defendant], not the slightest . . . . [I]n the trial of any criminal case, it becomes extremely important, vitally important, that you keep an open mind; that you don't come to any premature opinions."

[5] "Indictments are charges that are returned by a Grand Jury and are simply procedural in nature, and that is so because proceedings before a Grand Jury are different from proceedings before you, a trial jury, are secret. The defendant is not represented by counsel. Indeed, the defendant is not present and may know nothing whatsoever about the proceedings . . . . The Grand Jury . . . hear one side of the case. They hear the Commonwealth's side of a case . . . and if the Grand Jury sees fit, it returns . . . an indictment."

dence and beyond a reasonable doubt.[6] Unsatisfied, the defendant insists that it was error not to repeat the precise words, "presumption of innocence."

Instructions on the presumption of innocence are not necessary elements of due process of law, *Kentucky* v. *Whorton*, 441 U.S. 786, 789 (1979), and have caused much confusion. See *Commonwealth* v. *Boyd*, 367 Mass. 169, 188-189 (1975); *Commonwealth* v. *DeFrancesco*, 248 Mass. 9, 13-14 (1924). The presumption of innocence is not a presumption in the usual sense, but a shorthand reference to the premises from which a criminal trial proceeds. See McCormick, Evidence § 309, at 647-649 (1954); 9 J. Wigmore, Evidence § 2511 (Chadbourn rev. 1981). Thus we have held that judges need not give any particular content to the phrase "presumption of innocence," if the instructions make clear that an indictment does not imply guilt, and that the jury must base their decision on the evidence, and not on "suspicion or conjecture." *Commonwealth* v. *DeFrancesco*, *supra* at 13. *Commonwealth* v. *Boyd*, *supra* at 188-189. *Commonwealth* v. *Powers*, 294 Mass. 59, 63-64 (1936). Nevertheless, Massachusetts tradition holds that judges must, upon request, instruct the jury that the defendant is "presumed to be innocent." *Commonwealth* v. *Madeiros*, 255 Mass. 304, 315-316 (1926). *Commonwealth* v. *Anderson*, 245 Mass. 177 (1923).

Here, the defendant did not request an instruction on the presumption of innocence, or object to its omission. See *Commonwealth* v. *Powers*, *supra* at 64; *Commonwealth* v.

---

[6]"The fact that [the defendant] is being tried is no evidence against him, and that is so because under our system of Government in the trial of criminal cases it is incumbent upon the Commonwealth which has presented the charges to bear the burden of proof . . . . [T]he defendant is not required to prove his innocence in any way. He is not required to do anything. . . . He is in the position of one who says in effect to the Commonwealth, 'Now, here, you have indicted me on these various charges. Go ahead and prove them.' . . . The burden of proof is upon the Commonwealth to satisfy you and to satisfy you by proof beyond a reasonable doubt.

"So, on what do you base your findings in a case? You base it on the evidence."

*Madeiros, supra* at 316. The judge's instruction emphasized
the Commonwealth's burden of proof and the jury's respon-
sibility to decide the case on the evidence alone, and thus
amply fulfilled the protective purposes of a specific instruc-
tion on the presumption of innocence. See *Commonwealth*
v. *Boyd, supra* at 188. In the absence of a request, there
was no error in the judge's decision to explain in under-
standable terms, rather than to state in conclusory fashion,
that the defendant was presumed innocent.[7]

4. *Wording of the Indictments.*

In a related argument, the defendant finds fault with the
indictments, which began, in traditional fashion, with the
words "THE JURORS for the COMMONWEALTH OF
MASSACHUSETTS on their oath present . . . ." The de-
fendant contends that this language indicated a previous
finding of guilt by a jury, and undermined his presumption
of innocence. We disagree. The form of the indictments
was prescribed by statute, G. L. c. 277, § 79, and supported
by long usage. *Commonwealth* v. *Chase,* 350 Mass. 738, 740,
cert. denied, 385 U.S. 906 (1966). Moreover, the judge's in-
structions on the function of the grand jury[8] dispelled any
confusion arising from the language in question. See *Com-
monwealth* v. *Moffett,* 383 Mass. 201, 215-216 (1981).

5. *Relevancy of the Wooden Box.*

Ten days after the murder of Maurice Dean, two shots
were fired in the course of an incident at an apartment
occupied by one Lawrence Kaiser and others.[9] The shots

---

[7] Nor does the failure of defense counsel to request an instruction add
weight to the defendant's claim of ineffective assistance of counsel. There
is nothing to indicate that "better work [by counsel] might have accom-
plished something material for the defense." *Commonwealth* v. *Satter-
field,* 373 Mass. 109, 115 (1977).

[8] See notes 4 & 5, *supra.*

[9] The Commonwealth represents in its brief that this incident was an
armed robbery. At trial, however, the parties avoided this characteriza-
tion, in order to minimize the suggestion that the defendant had commit-
ted other crimes. Kaiser testified that a man had entered his apartment
and that he, Kaiser, had been shot.

came from the same gun used to kill Dean. Police investigating the scene of the incident found a small wooden box, and a fingerprint expert concluded that the defendant's prints were on the box. Kaiser testified that he did not own the box, and could not recall having seen it in the apartment. None of his roommates testified. The Commonwealth introduced the box as an exhibit.

The defendant contends that the judge should not have allowed the box in evidence, because "it was not properly identified and its admission was highly prejudicial." The essence of his argument appears to be that the exhibit was not sufficiently connected with the crime charged, or in other words, that it was not relevant. See *Commonwealth v. Rodriquez*, 364 Mass. 87, 94 (1973).

The fact that the defendant's fingerprints were found on a box at the scene of an incident involving the murder was relevant as circumstantial evidence of the identity of the defendant as the killer. Relevancy is simply "a rational tendency to prove an issue [at trial]." *Commonwealth* v. *LaCorte*, 373 Mass. 700, 702 (1977). *Commonwealth* v. *Rodriquez, supra* at 94. "The evidence need not point directly to the conclusion sought, if it provides a link in the chain of proof." P.J. Liacos, Massachusetts Evidence 408 (5th ed. 1981). Here, the defendant's fingerprints at the scene of the incident suggested that he was the man who had entered the apartment and fired two shots. *Commonwealth* v. *LaCorte, supra* at 702. The fact that the gun used in the incident was the gun used to kill Dean suggested that the gunman in Kaiser's apartment was also Dean's murderer.

Real evidence — such as the wooden box — may be used as circumstantial proof, if it is authenticated as the item actually involved in the case. See *Commonwealth* v. *LaCorte, supra* at 702; *Commonwealth* v. *Lamoureux*, 348 Mass. 390, 393-394 (1965); P.J. Liacos, *supra* at 394. Here, one of the officers who investigated the shooting incident, Officer McConkey, testified that he had observed the same box at the scene, and had seen another officer, Officer Bono, dust it for fingerprints. See *Commonwealth* v. *La-*

*Corte, supra* at 703-704; *Commonwealth* v. *Rodriquez, supra* at 95; McCormick, Evidence § 212, at 527 (2d ed. 1972). Officer McConkey also testified that he had observed Officer Bono remove the box from the scene. The Commonwealth's fingerprint expert then testified that Officer Bono had delivered the box to him. This record of police custody, coupled with Officer McConkey's identification, made it sufficiently probable that the box offered at trial was the original item and had not been tampered with. *Commonwealth* v. *Rodriquez, supra* at 95. See P.J. Liacos, *supra.* McCormick, *supra* § 212, at 528.

Neither the box nor the chain of evidence to which it belonged was unduly prejudicial. Real evidence may at times be sensational or inflammatory, and the judge should exclude it if he believes that its prejudicial effects outweigh its probative value. *Commonwealth* v. *Bastarache*, 382 Mass. 86, 105-106 (1980). P.J. Liacos, *supra* at 395. But there was nothing inflammatory about the small wooden box at issue here. The witnesses' references to the shooting incident may, as the defendant contends, have suggested the defendant's involvement in other crimes. The evidence was offered however, not as proof of criminal propensity, but as proof of identity, a vital issue in the trial. Moreover, both counsel took great care to avoid unnecessary reference to criminal acts during the incident. In these circumstances, the possible suggestion of criminal character did not call for exclusion of the evidence. *Commonwealth* v. *Rhoades*, 379 Mass. 810, 819-821 (1980). *Commonwealth* v. *Lacy*, 371 Mass. 363, 365-366 (1976). See Proposed Mass. R. Evid. 404 (b) (July, 1980).

6. *Statistical Evidence.*

A fingerprint expert, duly qualified, testified that fingerprints found on the wooden box and prints taken from the defendant showed twelve "points of similarity," and stated his opinion that the fingerprints on the box were those of the defendant. On redirect examination, the prosecutor asked the witness to give his opinion on the statistical probability that prints with twelve points of similarity could be made

by two different people. The witness replied that "[t]here is a figure of one out of 387 trillion." The defendant contends that this statement lacked foundation and exceeded the witness's expertise.

We agree that the witness's opinion on the statistical probability should have been excluded, but we find the error harmless. An expert who engages in comparison of evidence, such as fingerprints, to reach an opinion on identity, necessarily relies on probabilities drawn from statistical calculations or simply from his own experience. McCormick, Evidence § 204, at 498 n.64 (2d ed. 1972). Nevertheless, an opinion on the statistics themselves, offered as evidence of identity, raises special problems.[10] Statistical evidence can be misleading, and subtle differences in phraseology may change dramatically the import of the figures. See *People* v. *Collins*, 68 Cal. 2d 319, 329-332 (1968). See generally Annot., 36 A.L.R.3d 1194 (1971); Finklestein & Fairley, A Bayesian Approach to Identification Evidence, 83 Harv. L. Rev. 489 (1970); Tribe, Trial by Mathematics: Precision and Ritual in the Legal Process, 84 Harv. L. Rev. 1329 (1971); Finklestein & Fairley, A Comment on "Trial by Mathematics," 84 Harv. L. Rev. 1801 (1971); Tribe, A Further Critique of Mathematical Proof, 84 Harv. L. Rev. 1810 (1971). If admissible at all — a point we do not decide — it should at least be accompanied by an expert explanation of the calculations on which it is based. See *Miller* v. *State*, 240 Ark. 340, 342-344 (1966). See also *State* v. *Carlson*, 267 N.W.2d 170, 175-176 (Minn. 1978) (rejecting statistical evidence of identity despite foundation).

Here, however, the expert's opinion that the odds were 387 trillion to one that the fingerprints were made by the

---

[10] Probability figures that are offered only to show the basis of an expert's opinion, and are presented in a way that minimizes the chance of misleading the jury, might stand on different footing. See *Simon* v. *Solomon*, 385 Mass. 91, 105-106 (1982). But see *State* v. *Scarlett*, 121 N.H. 37, 41-43 (1981). Here, however, the witness's statement was offered as an opinion, and was not qualified as part of his opinion on the identity of fingerprints.

same person added nothing to his previous, positive opinion that they were made by the same person. In an area as well accepted and thoroughly proven as fingerprint comparison (see *Commonwealth* v. *LaCorte*, 373 Mass. 700, 705 [1977]; *Commonwealth* v. *Bartolini*, 299 Mass. 503, 513, cert. denied, 304 U.S. 565 [1938]), the expert's brief, cumulative statement concerning statistics was harmless. See *Commonwealth* v. *Whynaught*, 377 Mass. 14, 20 (1979); *Commonwealth* v. *Hoffer*, 375 Mass. 369, 374-375 (1978); *State* v. *Carlson*, *supra* at 176.

   7. *Observation of the Gun in the Defendant's Possession.*
   A witness testified that the defendant had at one time showed him a silver handgun, but could not recall when he had seen the gun. Maurice Dean was shot on March 1, 1974. The trial took place in October, 1975. The witness stated several times that he had known the defendant for approximately a year before trial, but also asserted that he had known the defendant in January, 1974. As to the gun, he stated that he did not know if he had seen it in "January or February or what," but recalled discussing his observation with police in April, 1974. The defendant argues that the witness's testimony should have been excluded because it was too "remote" and tended to impugn the defendant's character.
   We find no error. Evidence that the defendant possessed a gun tended to show that he had the means to commit the murder. *Commonwealth* v. *Watkins*, 375 Mass. 472, 491 (1978). *Commonwealth* v. *Caine*, 366 Mass. 366, 370-371 (1974). See *Commonwealth* v. *McLaughlin*, 352 Mass. 218, 229-230, cert. denied, 389 U.S. 916 (1967), vacated as to death penalty, 364 Mass. 211 (1973). In addition, the witness's statements that the gun was a silver handgun corroborated the descriptions of the defendant's gun given by Valengavich (Dean's companion) and by the taxi's passenger, and so strengthened the Commonwealth's case on the issue of identity. See *Commonwealth* v. *Rhoades*, 379 Mass. 810, 819-821 (1980). Contrast *Commonwealth* v. *Burke*, 339 Mass. 521, 534 (1959). See generally P.J. Liacos,

Massachusetts Evidence 408-409 (5th ed. 1981); Proposed Mass. R. Evid. 401 (July, 1980). The witness's confusion as to when he had seen the gun may have reduced the weight of the evidence, but the testimony, taken as a whole, suggested that his observation fell within a reasonably short time before, or perhaps soon after, the crime. See *Commonwealth* v. *Watkins, supra* at 491; *Commonwealth* v. *Berger,* 9 Mass. App. Ct. 814 (1980). In these circumstances, the judge could reasonably determine that the independent, probative value of the evidence overcame any incidental suggestion of criminal character or prior involvement with crime. See *Commonwealth* v. *Rhoades, supra* at 819-821; *Commonwealth* v. *Caine, supra* at 370-371; *Commonwealth* v. *Chalifoux,* 362 Mass. 811, 815-816 (1973).

8. *The Prosecutor's Closing Argument.*

The defendant next contends that the prosecutor improperly expressed his "personal opinions" in his closing argument. We have often warned that prosecutors must not express personal belief in a defendant's guilt, or indicate personal knowledge of the facts of a case. E.g., *Commonwealth* v. *Earltop,* 372 Mass. 199, 203 (1977); *Commonwealth* v. *Coleman,* 366 Mass. 705, 714 (1975). *Commonwealth* v. *Nordstrom,* 364 Mass. 310, 313 (1973). See *Commonwealth* v. *Hawley,* 380 Mass. 70, 84-90 (1980); *Commonwealth* v. *Shelley,* 374 Mass. 466, 469-473 (1978). See also *Commonwealth* v. *Earltop, supra* at 204-207 (Hennessey, C.J., concurring). On the other hand, prosecutors are entitled to marshal the evidence and suggest inferences that the jury may draw from it. *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 422-423 (1978). *Commonwealth* v. *Nordstrom, supra* at 314-316. We have reviewed the prosecutor's argument in this case, and find no impropriety. The prosecutor simply set forth his views of the evidence, taking care to tie each statement to specific testimony or exhibits. Throughout the argument, he prefaced his contentions with phrases such as "I suggest," and reminded the jury that they should draw their own conclusions. Moreover, when the defendant objected to particular character-

izations of the evidence, the judge instructed the jury that they should rely on their own memories and not on the opinions of counsel. See *Commonwealth* v. *Ferreira,* 381 Mass. 306,· 316-317 (1980); *Commonwealth* v. *Nordstrom, supra* at 313.

9. *Presumption of Malice.*

The defendant challenges a reference in the judge's instructions to a "presumption" of malice, claiming that this language tended to relieve the Commonwealth of its burden of persuasion. See *DeJoinville* v. *Commonwealth,* 381 Mass. 246, 252, 254 (1980); *Commonwealth* v. *Callahan,* 380 Mass. 821, 822-826 (1980); *Sandstrom* v. *Montana,* 442 U.S. 510 (1979); *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975). The instruction was identical to the malice instruction we upheld in *Commonwealth* v. *Medina,* 380 Mass. 565, 577-579 & n.4 (1980). The absence of an instruction on the presumption of innocence (discussed above in the third section of this opinion) does not distinguish the present case from *Medina.* Here, as in *Medina,* the judge's thorough instructions on the Commonwealth's burden of proof negated the slight possibility that the unfortunate word "presumption" might mislead the jury. Further, as in *Commonwealth* v. *Pisa,* 384 Mass. 362, 363-364 (1981), malice was not a contested issue, and the instruction could not have affected the defendant's rights.

10. *Review under G. L. c. 278, § 33E.*

We have reviewed the record and transcript, and find that the defendant received a fair trial before a conscientious judge. There is no reason to disturb the defendant's convictions.

*Judgments affirmed.*