COMMONWEALTH vs. LEO P. HEALY.

Plymouth.   December 20, 1982. — January 13, 1983.

Present: ARMSTRONG, GREANEY, & WARNER, JJ.

*Practice, Criminal,* Instructions to jury.

At a criminal trial the judge's use of anecdotal language illustrating his
    jury instructions on the presumption of innocence improperly quali-
    fied the presumption by inviting speculation on defense counsel's role
    and beliefs, tended to undermine the Commonwealth's burden of proof,
    and, in the circumstances, was error requiring reversal.  [136-138]

INDICTMENTS found and returned in the Superior Court
Department on July 26, 1979.

The cases were tried before *Viola,* J., a District Court
judge sitting under statutory authority.

*Patricia A. O'Neill* for the defendant.

*Robert M. Payton,* Assistant District Attorney, for the
Commonwealth.

GREANEY, J.  Following a jury trial in the Superior Court,
the defendant Healy was convicted of unarmed robbery,
assault and battery by means of a dangerous weapon, and
assault and battery.  Healy challenges the judge's instruc-
tions to the jury.  Specifically, he argues that the judge's
"anecdotal language illustrating the presumption of inno-
cence so undercut and negated the existence of that pre-
sumption as to have denied the defendant due process."  We
agree and order the convictions reversed.

The central issue at trial was the identity of the person
who assaulted and robbed the victim, a thirteen year old
boy.  At trial the victim identified Healy as his assailant.
There was evidence, however, that the lighting at the scene
of the incident had been poor, that the victim, who knew
Healy, initially told his father and the police that he could
not make an identification, and that the victim's father sug-

gested to his son that Healy might have committed the crimes. There was also evidence from several witnesses that Healy had been at home the night of the incident, that the place where the assault occurred was between three and four miles from Healy's home, and that Healy's mother had locked the family car and taken the only set of keys with her when she left, a few minutes after 8:00 P.M. The evidence indicated that the assault took place at approximately 8:00 or 8:15 P.M. There was further evidence that the manager of the convenience store which the victim had visited just prior to the assault had not seen Healy in the store that night and that a man matching the description given by the investigating police officer (whom the manager identified by name) had been at the store at the relevant time.

In his general instructions, the judge instructed the jurors in faultless language about the presumption of innocence.[1] After these instructions, however, and before the instructions on reasonable doubt, the judge made the following remarks to the jury:

> "When the [d]efendant pleads not guilty, you say to the Commonwealth, you prove the case beyond a reasonable doubt, and if you don't, you lose. It's as simple as that. I remembered during the course of a law day ceremony involving a school, many years ago, a young student asking can a lawyer defend a person who is guilty. Can you really defend somebody you know is absolutely guilty, and the answer is of course you can, because while in the newspapers you might read that a person has pleaded that the person is innocent, that's not a plea; the plea is not guilty. A person can be as guilty as anybody could ever be, tell an attorney, and the thing is that the attorney can do his job, and that is to see that the Commonwealth proves its case, and if it

---

[1] The instruction was requested by Healy's trial counsel. See generally *Taylor* v. *Kentucky*, 436 U.S. 478, 485-486, 490 (1978); *Commonwealth* v. *Madeiros*, 255 Mass. 304, 316 (1926); *Commonwealth* v. *Drayton*, 386 Mass. 39, 46-47 (1982).

cannot prove its case, it loses. So that a verdict of not guilty in some instances may be a decision on the part of a jury that the [d]efendant is innocent. We will never know.

"On the other hand, it may be that the Commonwealth has failed in its burden. So that is not a matter for a jury to go ahead and say that they have to decide whether or not a [d]efendant is guilty or innocent; that is not what a jury decides. The jury decides, very simply, one thing; has the Commonwealth proven beyond a reasonable doubt a charge. If they say yes, guilty; if they say no, not guilty. That's what this is about."

At the conclusion of the charge just prior to the luncheon recess, the defendant's trial counsel seasonably objected to the statements. No curative instructions were given. During the recess, Healy's counsel moved for a mistrial on the ground that the instruction had the effect of undercutting the presumption of innocence and tended "to focus [the jurors'] attention . . . [on] the lawyer['s] know[ledge] and [whether] he is pulling a con game . . . when his beliefs . . . are . . . of no consideration." The motion was denied. At 2:50 P.M., the jury asked for clarification on the standard of proof beyond a reasonable doubt. The judge reinstructed them from the *Webster* charge. *Commonwealth* v. *Webster,* 5 Cush. 295, 320 (1850). The jury returned to deliberate at 2:58 P.M., and reported at 3:40 P.M. that they could not reach a unanimous decision. At that point, they were given the *Tuey-Rodriquez* charge. See *Commonwealth* v. *Rodriquez,* 364 Mass. 87, 101-102 (1973). At 4:20 P.M., the jury returned with guilty verdicts.

"The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin* v. *United States,* 156 U.S. 432, 453 (1895). See also *In re Winship,* 397 U.S. 358, 363 (1970); *Estelle* v. *Williams,* 425 U.S. 501, 503 (1976); *Commonwealth* v. *Drayton,* 386 Mass. 39, 46

(1982). The presumption helps the jury understand "that one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *Taylor* v. *Kentucky*, 436 U.S. 478, 485 (1978). See *Commonwealth* v. *Madeiros*, 255 Mass. 304, 316 (1926). The presumption "serves as a focus on the prosecutor's burden of producing evidence of guilt and persuading the jury of the guilt beyond a reasonable doubt." *Commonwealth* v. *Boyd*, 367 Mass. 169, 188 (1975). Proper instruction on these rights impresses upon jurors that a defendant cannot be adjudged guilty of a crime unless they are convinced of his guilt "with utmost certainty." See *In re Winship*, 397 U.S. at 364. Since the presumption and the reasonable doubt standard are the primary guarantees of a fair fact-finding process, judges must avoid any language in jury instructions which negates the purpose of either principle.

We agree with the defendant that the judge's anecdote added a "self-defeating qualification" to the presumption, *Reynolds* v. *United States*, 238 F.2d 460, 463 (9th Cir. 1956), which invited improper speculation by the jury on defense counsel's role and beliefs and which tended to undermine the burden of proof. Compare *Reynolds* v. *United States, supra*; *People* v. *Long*, 407 Ill. 210, 214 (1950); *State* v. *Thomas*, 307 Minn. 229, 231 (1976); *Chinn* v. *State*, 210 So. 2d 666, 668 (Miss. 1968). We note that the jury had difficulty with the case and required further instruction on the meaning of reasonable doubt and (after a report of deadlock) the impetus of the *Tuey-Rodriquez* charge before they could reach a verdict. In the circumstances, we cannot accept the Commonwealth's argument that the anecdote may have been of benefit to the defendant by emphasizing, in some peculiar way, that the sole issue for decision was whether the Commonwealth had established guilt beyond a reasonable doubt. The remarks, coupled with the giving of the *Tuey-Rodriquez* charge, might have influenced jurors har-

boring a reasonable doubt to resolve the doubt in the Commonwealth's favor. We also reject the Commonwealth's argument that the charge viewed as a whole is free of error. The verdict may have been based on the erroneous impression conveyed by the anecdote, rather than on an impartial consideration of the evidence in light of the Commonwealth's burden of proof on identification.

We add one further note of caution. There is no doubt that the judge's remarks were made in good faith without any design to denigrate the defendant's rights or the burden of proof. Nevertheless, his remarks tended to have precisely that effect. "Whatever their value in other areas of the law in adding zest or currency to otherwise all too predictable proceedings, personal variations on elements such as reasonable doubt seldom represent sound judicial practice. A common effect of such variations is to excite both controversy and appellate litigation without any off-setting assurance that the attempted clarification is either necessary . . . or successful . . . ." *United States* v. *MacDonald*, 455 F.2d 1259, 1263 (1st Cir.), cert. denied, 406 U.S. 962 (1972). The same sentiment applies with equal force to the presumption of innocence. Although it has been said before, we think it bears repeating that embellishment of the approved formulations of the presumption of innocence and the reasonable doubt standard is unnecessary and is to be avoided.

*Judgments reversed.*

*Verdicts set aside.*