COMMONWEALTH vs. ANDREW J. BLANCHETTE.

Bristol. December 3, 1990. - January 14, 1991.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Homicide. Insanity. Intent. Practice, Criminal*, Instructions to jury, Presumptions and burden of proof, Voluntariness of statement, Trial of issues together.

The judge at a murder trial adequately instructed the jury as to the effect of the defendant's mental illness on his capacity for deliberate premeditation. [103-104]

At a murder trial the judge's instructions, taken as a whole, adequately conveyed to the jury the presumption of innocence. [104-106]

At a murder trial the judge, after voir dire, was warranted in finding beyond a reasonable doubt that certain oral and written statements of the defendant were voluntary. [106-108]

A judge did not abuse his discretion in denying a defendant's motion for a separate trial of the issue of his criminal responsibility. [108]

The judge at a murder trial was not required to instruct the jury on the consequences of a verdict of not guilty. [108-109]

INDICTMENT found and returned in the Superior Court Department on April 7, 1981.

The case was tried before *William H. Carey*, J., and a motion for a new trial was heard by him.

*Francis M. O'Boy* for the defendant.

*Cynthia A. Vincent*, Assistant District Attorney, for the Commonwealth.

NOLAN, J. The defendant, Andrew J. Blanchette, was indicted for murder in the first degree on April 7, 1981. Prior to trial, he was committed to Bridgewater State Hospital (Bridgewater), pursuant to G. L. c. 123, §§ 15, 18 (1988 ed.). After a hearing, the trial judge ruled that the defendant was competent to stand trial. On December 7, 1983, the defendant was found guilty of murder in the first degree and

sentenced to the mandatory life imprisonment at the Massachusetts Correctional Institution at Cedar Junction. He was transferred to Bridgewater under G. L. c. 123, § 18 (1988 ed.), where he has remained until the present date.

On December 30, 1983, the defendant filed a motion for a new trial, which was denied. On October 16, 1984, he filed a notice of appeal from the denial of his motion for a new trial. On October 19, 1984, the defendant filed a notice of appeal from his conviction. On November 21, 1986, the case was entered in this court.[1] We now affirm the conviction of murder in the first degree.

From the evidence at trial, the jury were warranted in finding the following facts. At 7:45 P.M. on February 21, 1981, the defendant's brother, Eugene Blanchette, notified the Attleboro police department that his mother, Emelia Blanchette (the victim), was missing from her home at 138 Knight Avenue. Eugene Blanchette's daughter had spoken with her on the telephone at approximately 2 or 2:30 P.M. on that day. Of the people who testified, she was the last to speak to the victim. Eugene Blanchette testified that he had last seen his brother at 6:15 P.M. that day as the defendant left 138 Knight Avenue. That evening, Eugene Blanchette and others searched 138 Knight Avenue for Emelia Blanchette. They did not find her.

At 7:30 the next morning, Attleboro police officers arrived at the Blanchette home and searched for the victim. One officer searched the victim's bedroom, including the closet. The room was in "shambles" and was also "unreasonably warm." The bedroom had a closet which was stacked three feet high with a pile of clothing, fabric, and yarn. The officers testified that none of them noticed the characteristic odor associated with a dead body. Later that day, at about 1:30 P.M., a detective noticed a hand protruding from the pile of clothing. The body of Emelia Blanchette was found underneath the pile of clothing.

---

[1]The defendant did not file a brief until July, 1990, and this accounts for the delay.

The victim was found with a gag in her mouth and several nylon stockings tied in knots around her neck. The victim's face was bloody and swollen. There were massive injuries to the face and head. An autopsy was performed and the cause of death was determined to be massive injuries to the head and asphyxiation due to strangulation. Although the time of death was contested at trial, there was evidence from which the jury could find that the time of death was approximately 3 P.M. on February 21, 1981.

At about 7:30 A.M. on February 22, 1981, Attleboro police officers found the defendant, Andrew Blanchette, near a wooded swamp about one and one-half miles from the victim's home. The officers asked the defendant when he had last seen his mother. At first, he said he had not seen her in three days. Later he said he had not seen her since Friday, two days earlier. The defendant was asked where his mother might be, to which he responded, "I didn't do anything wrong. I've been good." Although the defendant lived with his mother at 138 Knight Avenue, the defendant told the officers he had spent the night in the woods. The defendant, a diabetic, had syringes in his possession. He was placed in custody and charged with illegal possession of hypodermic needles and syringes. The defendant was arrested and brought to the station. Upon an inventory of the defendant's belongings, the police found a key chain with a red garnet ring on it which belonged to the victim. The victim wore the ring every day. Also taken from the defendant were several articles of clothing which were then sent to the State laboratory for analysis. The test results indicated that there was blood present on some of the articles of clothing.

Further evidence included the following two admissions by the defendant. On February 7, 1982, the defendant wrote a letter to his uncle, Andrew Nyzio, in which he confessed to the murder.[2] In the letter, the defendant also boasted that he

---

[2]The letter stated in pertinent part: "When I started to kill her she thought I was going to rape her. Honest to God she did. So I spit a [sic] beat the living shit out of her."

could "buy and sell" his uncle, threatened his uncle that his motorcycle friends would pick the defendant up in the defendant's Lincoln Continental automobile and that then he would kill every one of the Nyzios. The first page of the letter also had a number of swastikas drawn on it.

The defendant also admitted the crime to a witness who testified that he had visited the defendant at Bridgewater. The witness, John Governo, testified that during a May, 1982, visit the defendant related that he had killed his mother. The defendant stated that she had yelled at him for using the telephone and that he had "just smacked her" and then kept hitting her. He also stated that he should have killed her years ago.

Prior to trial, the defendant filed notice of an insanity defense pursuant to the Mass. R. Crim. P. 14 (b) (2), 378 Mass. 874 (1979). A forensic psychiatrist evaluated the defendant at the request of the Commonwealth. He testified that the defendant suffered from schizophrenia, but that this disease on February 21, 1981, did not impair him to such a degree that he lacked substantial capacity to appreciate the wrongfulness of his behavior or to conform his conduct to the requirements of law.

The defendant raises several issues on this appeal: (1) the judge failed to instruct the jury properly that they could consider the defendant's mental condition on the issue of premeditation; (2) the judge's instruction on the presumption of innocence erroneously stated that the presumption lasted only until the start of the trial; (3) the admissions he made in a letter to his uncle and to a visitor at Bridgewater were erroneously admitted because they were not the products of a rational mind and, thus, involuntary; (4) the judge should have granted his motion for a bifurcated trial on the insanity and guilt issues; (5) the judge should have instructed the jury on the consequence of a not guilty verdict, namely that the defendant could be subject to civil commitment on such a verdict; and (6) the defendant asks this court to grant a new trial under our power pursuant to G. L. c. 278, § 33E (1988 ed.). We find no merit in any of the defendant's claims and

accordingly affirm the conviction. We shall discuss each of the issues in turn.

1. *Deliberate premeditation.* The defendant argues that the judge failed properly to instruct the jury on the effect of the defendant's mental condition on the issue of deliberate premeditation. He argues that the judge should have instructed the jury on the difference between the degree of mental illness required to find lack of criminal responsibility and that required to allow them to find that the illness affected deliberate premeditation. We find no error. The judge adequately instructed the jury on the issue of the relationship between the defendant's diminished mental capacity and first and second degree murder, independent of the issue of legal insanity.

In *Commonwealth* v. *McHoul*, 352 Mass. 544, 547 (1967), we determined the definition of legal insanity to be a lack of "substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law." In *Commonwealth* v. *Gould*, 380 Mass. 672 (1980), we decided that evidence of a defendant's mental illness could be properly considered, not just on the issue of criminal responsibility under *McHoul*, but also on how the mental illness may have affected deliberate premeditation. The defendant contends that the instructions to the jury did not adequately separate these two different standards.

"[T]he adequacy of instructions must be determined in light of their over-all impact on the jury." *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-232 (1980). In its entirety, the judge's charge adequately instructed the jury of the impact of the mental illness, first on whether there was criminal responsibility under the standard set forth in *McHoul*, and second, the impact that mental illness would have on forming the requisite intent under *Gould*.

First, the judge instructed the jury on the *McHoul* standard. During the course of the instructions, he set forth the *McHoul* standard four times and explained to the jury that this was the test they should use to determine whether the

defendant was sane at the time he committed the crime. The
judge then instructed the jury that the mental illness could
also have an impact on whether the defendant was capable of
deliberate premeditation. The judge stated: "In order for you
to find the defendant guilty of first degree murder you must
find that he has the mental capacity to commit all of the
elements of the crime for first degree murder, which include
the essential elements of deliberate premeditation, which I
have described to you at the beginning of this instruction and
which is essential for first degree murder. In other words, the
defendant's illness must be considered on the issue of deliber-
ate premeditation since that bears upon the requirements for
first degree murder."[3]

We conclude that, taken as a whole, the instructions to the
jury adequately informed them of the difference between the
*McHoul* standard on legal insanity and the impact of mental
illness on deliberate premeditation under *Gould*. There was
no error.

2. *Presumption of innocence.* The defendant contends that
the judge's instruction on the presumption of innocence erro-
neously stated that the presumption lasted only until the
start of trial. We note at the outset that the defendant did
not object on this ground at the time of trial. Although there
was no timely objection, we shall review the instructions

---

[3]The judge further stated: "If he did not have the mental requirements
for first degree murder, then he must have the requirements or mental
capacity for the requirements of second degree murder before you may
convict him. Even though it may be possible, and again without any sug-
gestion on my part, that he may not have the capacity for performing the
elements of the crime of first degree murder, it does not necessarily mean
he does not have the capacity for meeting the requirements of second de-
gree murder since the requirements are different."

Later in the charge, the judge stated: "But, if you conclude that he did
it, but he did not have the mental capacity to deliberately premeditate for
first degree murder, but that he did have sufficient mental capacity to fall
under the requirements for second degree murder, then you must find him
guilty of murder in the second degree. It is for the jury to determine this
issue of responsibility and the effect, if any, of the mental illness of the
crimes that have been charged with the help of the expert witnesses that
have been presented to you."

given to the jury pursuant to our duties under G. L. c. 278, § 33E, to determine whether there is a "substantial likelihood that a miscarriage of justice has occurred." *Commonwealth* v. *Roberts*, 378 Mass. 116, 123 (1979). We have reviewed the judge's instruction and find no error.

The defendant points to a sentence in the charge in which the judge stated: "[T]he trial starts off with the defendant being presumed to be innocent, and in order to find him guilty . . . the Commonwealth must prove by evidence beyond a reasonable doubt that he is guilty of the charges against him." We reiterate that we must look to the over-all impact the instructions had on the jury. *Commonwealth* v. *Sellon*, *supra* at 231-232, and cases cited. Taken as a whole, the charge adequately conveyed to the jury the presumption of innocence. Before the judge uttered the sentence above he stated to the jury that "you must always remember that the defendant in this case *stands* before you with a presumption that he is innocent of any crime." Later in the charge, the judge noted to the jury that "you must consider the defendant innocent until the Commonwealth convinces you by this standard of proof that he's guilty."

The function of the charge on the presumption of innocence is to "emphasize to the jury that 'the finding of an indictment by the grand jury . . . [is] not to be regarded as . . . [a circumstance] tending to criminate the defendant or creating against him unfavorable impressions.' " *Commonwealth* v. *Boyd*, 367 Mass. 169, 188 (1975), quoting *Commonwealth* v. *DeFrancesco*, 248 Mass. 9, 13 (1924). We have stated that "judges need not give any particular content to the phrase 'presumption of innocence,' if the instructions make clear that an indictment does not imply guilt." *Commonwealth* v. *Drayton*, 386 Mass. 39, 46 (1982). The judge's charge in this case more than adequately complied with the principles set forth in the aforementioned cases. The judge not only instructed on the presumption itself, he also cautioned the jury that the grand jury indictment had no evidentiary significance at all, in compliance with *Drayton*. In *Drayton*, even though the judge did not instruct the jury on

the presumption per se, it was enough that he "explained with care the attitude with which the jury should approach the case, the role of indictments and of the grand jury, and the Commonwealth's responsibility to prove the crimes charged by competent evidence and beyond a reasonable doubt." *Id.* at 45-46. The judge in the case before us did all of these things *and* instructed the jury that the defendant stood before them with a presumption of innocence. The instructions were free from error.

3. *Voluntariness of the admissions.* The defendant contends that his letter to his uncle and his statements to John Governo were not the products of a rational mind and, thus, the statements should not have been admitted because they were not voluntary for the purposes of due process. There was no error in the judge's ruling to admit this evidence.

We have previously suggested that "a judicial determination of voluntariness is necessary whenever questions concerning the voluntariness of a defendant's statements are raised, even when the statements are made to private citizens." *Commonwealth* v. *Allen*, 395 Mass. 448, 456 (1985) (statements defendant made to a nurse were properly admitted after hearing at which there was evidence that defendant was oriented and responding appropriately to questions asked). When voluntariness is an issue, a judge should conduct a voir dire examination to determine whether the statements are indeed voluntary. *Id.*, citing *Commonwealth* v. *Harris*, 371 Mass. 462, 469-470 (1976). If the judge determines that the statements are voluntary, the question should be submitted to the jury so that they may make the final determination. *Commonwealth* v. *Allen, supra* at 456. The Commonwealth has the burden of proving the voluntariness of such statements beyond a reasonable doubt. *Commonwealth* v. *Tavares*, 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982).

In this case, the judge conducted voir dire examinations to determine both the voluntariness of the letter to Andrew Nyzio, and the statements and letters to John Governo. He determined, after hearing the testimony, that the statements

were made voluntarily by the defendant, and admitted them. We must determine whether the judge's finding was warranted. *Commonwealth* v. *Allen, supra* at 457. "[A]n appellate court cannot disturb the judge's findings of subsidiary facts if they are supported by the evidence." *Id.,* quoting *Commonwealth* v. *Mahnke*, 368 Mass. 662, 689 (1975), cert. denied, 425 U.S. 959 (1976).

The judge conducted extensive voir dire on the issue of the voluntariness of the letter sent to Andrew Nyzio. On voir dire, a psychologist from Bridgewater, who had examined the defendant on a number of occasions, testifed on direct examination that the letter was the product of a rational mind. The psychologist based his testimony, in part, on the fact that to send such a letter the defendant would have had the "ability to . . . convey information, in written form, to request paper and envelope from correctional officers, to put down an appropriate address on an envelope, including a return address, and finally, to present that material to the officers so that it might be mailed on the one day of the week in which patients are allowed to obtain free mail privileges." On the basis of this evidence, the judge concluded that the statements were the product of rational intellect. We shall not disturb this finding.

The judge also conducted a voir dire examination of John Governo, to determine the voluntariness of the statements made to him by the defendant. After listening to Governo's testimony that he had known the defendant all of his life, that the defendant appeared "normal," spoke in a normal tone of voice when he confessed the murder, and said that other facts the defendant told him that day were accurate, the judge admitted the testimony of Governo. The admissions contained in letters to John Governo were also the subject of the voir dire examination and were also found to be voluntary. There was sufficient evidence to warrant the judge's finding of voluntariness. Furthermore, the judge properly instructed the jury that they must find beyond a reasonable doubt that the admissions were voluntary before considering

them as evidence.[4] There is no merit in the defendant's argument.

4. *Motion for bifurcated trial.* The defendant contends that he was prejudiced by the judge's denial of his motion for a bifurcated trial because he had to present two different defenses to the jury, one on the merits and one on the issue of criminal responsibility. We find no error.

We note at the outset that a defendant does not have a constitutional right to a bifurcation of a trial on the merits and a trial on the issue of the defendant's lack of criminal responsibility. *Commonwealth* v. *Siegfriedt*, 402 Mass. 424, 431 (1988). The decision rests within the sound discretion of the trial judge. *Id.* We have reviewed all of the evidence presented as well as argument presented on the motion to bifurcate. There has been no abuse of discretion.

5. *Instruction on the consequence of a not guilty verdict.* The defendant had filed a request for an instruction on the consequence of a not guilty verdict. The defendant argues that the same rationale for allowing a trial judge to instruct a jury on the consequence of a "not guilty by reason of insanity" verdict, compels an instruction on the consequence of a straight "not guilty" verdict. The judge refused to give such an instruction. The defendant points to *Commonwealth* v. *Mutina*, 366 Mass. 810, 817-823 (1975), in which this court stated that the rationale behind instructing a jury on the consequence of a not guilty by reason of insanity verdict

---

[4]On this issue, the judge stated in part: "But, it's your job to determine whether or not the statements made by this defendant or the things that were written by this defendant were voluntary. Although I have permitted those statements into evidence, before you consider the validity of those statements, assuming that they were made by the defendant, you must be satisfied by evidence produced by the Commonwealth beyond a reasonable doubt that these statements were voluntarily given before you may consider them on the issue of his guilt or innocence . . . . However, if upon the construction of the evidence, you are not satisfied *beyond a reasonable doubt* that the statements were freely and voluntarily made or that any particular act, like the letter, was not freely or voluntarily written and was not the product of a rational intellect under the totality of the circumstances that were presented before you, then you must ignore that piece of evidence" (emphasis supplied).

was to prevent "unnecessary speculation" from entering into juror deliberations, to prevent jurors from proceeding on erroneous bases, and because jurors are entitled to know what protection they and fellow citizens will be provided if they arrive at such a verdict. *Id.* at 819-822.

Although some of the factors in *Mutina* are arguably relevant to a case like this, we decline to require such an instruction. A judge *may* give such an instruction but is not required to do so. We find no abuse of discretion in this judge's refusal to instruct the jury on the consequences of a not guilty verdict. The jury in this case made an affirmative finding that the defendant was guilty of murder in the first degree. We do not disturb this finding.

We have reviewed the entire record pursuant to our duties under G. L. c. 278, § 33E, and find no reason to conclude that there was error or that the conviction should be reduced to murder in the second degree.

*Judgment affirmed.*