COMMONWEALTH *vs.* WILFREDO VASQUEZ.

Plymouth. December 9, 1980. — January 28, 1981.

Present: GREANEY, DREBEN, & NOLAN, JJ.

*Identification. Rape. Kidnapping. Constitutional Law,* Double Jeopardy.

At a criminal trial, there was sufficient evidence to warrant a finding that a photographic identification procedure was not unnecessarily suggestive. [264-266]

At a criminal trial, there was sufficient evidence to warrant a finding that the victim's observation, and subsequent identification, of the defendant through a "two-way mirror" in the wall between the adjoining rooms in which each was being interviewed by police officers was entirely accidental and not prearranged by the officers. [266-267]

At the trial of a defendant on charges of rape and kidnapping, there was sufficient evidence concerning the defendant's confinement of the victim at a bus stop and while on the way to an abandoned building in which the rape occurred to warrant a finding that a kidnapping had occurred separate and apart from the commission of the rape. [267-268]

INDICTMENTS found and returned in the Superior Court Department on September 28, 1978.

The cases were tried before *Spring, J.*

*William J. Leahy* for the defendant.

*Robert M. Payton,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. On the morning of July 25, 1978, the victim, age thirteen, was taken by a young man from a bus stop in Brockton to a room in an abandoned building and raped. Later that day, the victim made a photographic identification of the defendant. The next day, he again identified the defendant in an encounter at the Brockton police station. The defendant was subsequently convicted

on indictments charging him with rape of a child (G. L. c. 265, § 23) and kidnapping (G. L. c. 265, § 26), and sentenced to concurrent terms at the Massachusetts Correctional Institution at Walpole. On this appeal, the defendant urges error in the denial of (1) his motion to suppress two out-of-court identifications and the in-court identification of himself made by the victim (on the basis that the identifications failed pertinent constitutional standards); and (2) his motion for a directed finding of not guilty on the kidnapping charge (on the basis that confinement incidental to an act of rape cannot, as a matter of law, support a conviction for kidnapping).

Our summary of the facts is drawn from the judge's findings amplified by some recourse to the evidence. About 11:30 A.M. on the day of the incident the victim was approached at a Brockton bus stop by a young man with whom he conversed face-to-face in broad daylight for about five minutes. Eventually, this young man took the victim by the wrist and the two proceeded to a room in an abandoned building where the sexual assault occurred. The episode in the room lasted approximately fifteen minutes. Thereafter, the crimes were reported to the police. The victim described his assailant as a tall, thin, dark-complexioned Puerto-Rican teenager with black wavy hair. Based on this description, a police detective had the victim examine a book containing photographs of juvenile offenders to see whether an identification could be made.[1] This book contained 119 photographs, arranged six to a page — approximately twenty photos were of black or Spanish-surnamed juveniles. The pictures of seven individuals were repeated in the book. The defendant, the only Spanish-surnamed

---

[1] The detective testified that this was the only book in the possession of the Brockton police department which contained pictures of juvenile subjects. Other albums were available that contained photographs of criminals based on the type of crime involved such as robbery or breaking and entering. There were also separate books of black and Puerto Rican adult offenders which were not chosen first because the victim described his assailant as a person under twenty.

person whose photo was duplicated, appeared twice on page eighty.[2] Upon reaching that page, the victim made a selection of both pictures of the defendant, stating "it is either him" (pointing to one photo) "or him" (pointing to the other).[3]

That evening, the detective went to the defendant's home where he informed the defendant's father (the defendant was out) that he wanted to speak to his son about an assault. The next morning the victim and his parents kept a scheduled appointment with the detective to review the incident. While this group was meeting in the "juvenile" room on the second floor of the Brockton police station, the defendant accompanied by his father and brother came to the station. The defendant and his family were ushered to the "narcotics" room which adjoined the juvenile room.[4] The common wall between the rooms contained a "two-way mirror" which permitted someone in the narcotics room to be viewed from the juvenile room without the viewer being seen.[5] At some point during his conversation with the victim, the detective excused himself from the room and went to speak to the defendant. The victim and his parents were unaware of the fact that the defendant had come to the station and that he had been placed in the next room. While the detective was speaking to the defendant alone (his father

---

[2] There was testimony that a picture was inserted in the book each time the subject was arrested. The defendant had been arrested twice.

[3] We have examined both pictures. They are color snapshots of the defendant's face. Neither picture contains any of the material (such as a police department number) usually found in mug-shots. The photos were taken on different dates and to the casual observer appear dissimilar due to the fact that the defendant's hair in one picture is almost completely covered by a wide-brimmed hat.

[4] There was evidence that the police used special care bringing the defendant and his family into the neighboring room to avoid any encounter with the victim.

[5] This room had been used at one time as an "interrogation" room for identification procedures. The evidence indicated that this use had been discontinued for some period although the "two-way mirror" had not been removed.

and brother having been excused from the room) the victim, without the officer's knowledge, looked through the two-way mirror and saw the defendant. Upon his return, the detective was informed that the victim had again seen and identified his assailant.

The judge failed to rule on the issue of suggestiveness in connection with the photographic identification. He concluded that the stationhouse identification "was purely happenstance and was not prearranged." To the extent that it might later become relevant, the judge also ruled that the victim's proposed in-court identification was based on observations made at the time of the incident "independent of the chance meeting . . . at the police station." The motion to suppress was denied. At trial, evidence of both pretrial identifications was introduced and an in-court identification was made. The defense was based on alibi.

On review, we will accept the judge's findings of fact in the absence of clear error. We will also accept his resolution of conflicting testimony. *Commonwealth* v. *Murphy,* 362 Mass. 542, 550-551 (1972) (Hennessey, J., concurring). *Commonwealth* v. *Sires,* 370 Mass. 541, 544 n.1 (1976). *Commonwealth* v. *Correia,* 381 Mass. 65, 76 (1980). *Commonwealth* v. *Worlds,* 9 Mass. App. Ct. 162, 166 (1980). While we are not bound by the judge's ultimate findings we will accord them substantial deference. *Commonwealth* v. *Murphy,* 362 Mass. at 551. *Commonwealth* v. *Jones,* 375 Mass. 349, 354 (1978). See *Commonwealth* v. *Correia,* 381 Mass. at 76.

1. (*a*) The defendant contends that the photographic selection was unnecessarily suggestive because the album contained few pictures of Spanish-surnamed individuals and because his was the only such picture shown twice on the same page.

The question involved in the judicial assessment of an out-of-court identification challenged on constitutional grounds is whether, in the totality of the circumstances, the police have procured the identification by practices so impermissibly suggestive as to give rise to a very substantial

likelihood of irreparable misidentification. *Simmons* v. *United States*, 390 U.S. 377, 384 (1968). *Commonwealth* v. *Clark*, 378 Mass. 392, 399 (1979). In essence, the reviewing court applies a test of fairness which focuses on the reasonableness of the police procedures in terms of avoidable prejudice. See *Commonwealth* v. *Dougan*, 377 Mass. 303, 315-316 (1979); *Commonwealth* v. *Napolitano*, 378 Mass. 599, 604 (1979). See also *Allen* v. *Moore*, 453 F.2d 970, 973 (1st Cir.), cert. denied, 406 U.S. 969 (1972). The test balances the need for efficient police work in the aftermath of a serious crime against the defendant's constitutional right that any identifications made of him derive from the witness's independent memory of the criminal free of improper suggestions by the police. Cf. *Commonwealth* v. *Wheeler*, 3 Mass. App. Ct. 387, 392 (1975).

At the time the victim was shown the book of photographs, the police had made no arrest and had no suspect under consideration. In the circumstances, a photographic identification represented the best available procedure. See *Simmons* v. *United States*, 390 U.S. at 384-385. The detective could reasonably assume, from the victim's description, that a dark-complexioned, teenage person[6] of Puerto Rican origin had committed the offense. The detective could also assume that the victim was able to make an accurate photographic identification of his assailant because the offense had occurred that same day and because the victim had observed the assailant for several minutes under daylight conditions. The circumstances made the use of the juvenile offender album logical and appropriate.

There were more than 100 photographs in the album. Of these, at least twenty photos were of dark-skinned young men. The evidence did not convincingly demonstrate that this group, even if considered as a separate array, was an unfair cross-section. The fact that the defendant's picture differed in some respects from several others is not sufficient to establish suggestiveness. *Commonwealth* v. *Clark*, 378

---

[6] The defendant was eighteen years old at the time of the incident.

Mass. at 399-400. *Commonwealth v. Worlds*, 9 Mass. App. Ct. at 167. While the double display of the defendant's picture on the same page could have been avoided, this factor does not require a finding of suggestiveness if the procedure, taken as a whole, was fair. See *United States v. Magnotti*, 454 F.2d 1140, 1142 (2d Cir. 1972); *United States v. Sherrey*, 318 A.2d 903, 904-905 (D.C. App. 1974). The evidence supported findings that the victim received no prompting from the detective, that he examined the album with care, that the two photographs of the defendant appeared to be different, and that the victim was drawn to them by application of his independent memory of the assailant rather than by their placement on the same page. See discussion in *Commonwealth v. LaPierre*, 10 Mass. App. Ct. 641, 644 (1980). The evidence also supports the judge's apparent rejection of the argument that the detective informed the victim that the pictures were of the same person.[7] We are satisfied that the police work at this stage was fairly conducted and that the photographic identification was the product of the victim's own recollection without inducement or reinforcement by impermissible suggestions. The defendant did not meet his burden in demonstrating the opposite.[8] See *Commonwealth v. Cincotta*, 379 Mass. 391, 394 (1979), and cases cited.

(*b*) Suppression of the station house identification was sought on the basis that an impermissible and suggestive one-on-one confrontation had taken place. By definition, however, a confrontation does not occur unless there is a "calculated move by the police to bring about pre-trial observations of a suspect by an eyewitness." *Commonwealth*

----

[7] The judge apparently accepted the detective's testimony that he informed the victim's parents, but not the victim, that both pictures represented the same person, and the victim's testimony that he had not been told after he made his selections that he had chosen two photos of the defendant. It appears that the judge rejected any evidence that would raise a contrary inference.

[8] The defendant's other arguments regarding the suggestiveness of the identification procedure rest primarily on portions of the evidence that the judge disbelieved. They need not be discussed.

v. *D'Ambra,* 357 Mass. 260, 263 (1970). Thus, accidental encounters between victim and suspect in which the police make no attempt to elicit an identification have been uniformly held not to implicate due process considerations. *Commonwealth* v. *Leaster,* 362 Mass. 407, 410 (1972). *Commonwealth* v. *Walker,* 370 Mass. 548, 564-565, cert. denied, 429 U.S. 943 (1976). *Commonwealth* v. *Schlieff,* 5 Mass. App. Ct. 665, 670-671 (1977). *Commonwealth* v. *Brimage,* 6 Mass. App. Ct. 869 (1978). See *Commonwealth* v. *Barnett,* 371 Mass. 87, 93 n.7 (1976), cert. denied, 429 U.S. 1049 (1977) (an accidental confrontation even occurring in suggestive circumstances would be admissible). See also Model Code Pre-Arraignment Procedure § 160.2 & Commentary at 438-439 (1975); Sobel, Eyewitness Identification § 20 (Supp. 1980). The evidence warranted a finding by the judge that the defendant turned up at the station unexpectedly, that he was not intentionally placed in a room near the victim to obtain an identification, that the victim was unaware of the defendant's presence in the next room, that use of the "two-way mirror" had been discontinued, and that the victim's observations were unanticipated. The judge's ultimate conclusion that the defendant was recognized at a chance encounter was proper and will not be disturbed.[9] See *Allen* v. *Moore,* 453 F.2d at 974. Compare *Commonwealth* v. *Kazonis,* 356 Mass. 649, 651-653 (1970) (prearranged meeting at stationhouse found suggestive and ordered suppressed).

2. The defendant argues that his motion for a directed verdict of not guilty on the kidnapping charge should have

---

[9] Almost every time a defendant is at the police station or at a courthouse at the same time as the victim and a meeting occurs, it could be argued that the encounter was planned by the police because they brought the defendant to the stationhouse or courthouse for a particular purpose. But the cases distinguish between encounters between a victim and the defendant where the defendant is at the police station or courthouse for a legitimate purpose other than an identification procedure (such as booking or a probable cause hearing) and those situations where he is brought to a public facility solely to be seen by the victim. This distinction is made clear by a comparison of the cases cited in the text.

been allowed because the victim's confinement was merely incidental to the commission of the rape and hence merged therein. In support of this argument, the defendant presents cases from several jurisdictions which follow the rule stated in *People* v. *Cassidy*, 40 N.Y.2d 763, 767 (1976): "The merger doctrine is intended to preclude conviction for kidnapping based on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them." See *People* v. *Daniels*, 71 Cal. 2d 1119 (1969); *People* v. *Adams*, 389 Mich. 222 (1973); *State* v. *Dix*, 282 N.C. 490 (1973); *State* v. *Donald*, 57 Ohio St. 2d 73 (1979). The defendant contends in essence that his prosecution for both offenses amounted to a variant of double jeopardy.

Passing the question whether this ground was properly raised in the argument on the motion made before the trial judge, we think there was sufficient evidence concerning the defendant's confinement of the victim at the bus station and while on the way to the house some distance away to warrant the jury in finding that a kidnapping had occurred, separate and apart from the commission of the rape. See *Commonwealth* v. *Talbot*, 5 Mass. App. Ct. 857 (1977); *Commonwealth* v. *LaPierre*, 10 Mass. App. Ct. at 642, 645 n.3. As a result we need not consider whether the rule quoted above is, or should be, the law of this State. Furthermore, we note that it has been consistently held, in the absence of a showing of prejudice (no such showing has been made in this case), that the imposition of concurrent sentences independently forecloses the need to consider whether the charges impermissibly duplicate each other. See *Green* v. *United States*, 274 F.2d 59, 61 (1st Cir. 1960), aff'd 365 U.S. 301, 306 (1961); *Commonwealth* v. *Kiley*, 373 Mass. 454, 461-462 (1977); *Commonwealth* v. *Grasso*, 375 Mass. 138, 140 (1978); *Fadden* v. *Commonwealth*, 376 Mass. 604, 609-610 (1978).

*Judgments affirmed.*