COMMONWEALTH *vs.* RICHARD N. CALHOUN. No. 89-P-636. March 7, 1990. *Identification.*

There was enough comic opera in the pivotal scene at the Pawtucket, Rhode Island, police station to warrant the trial judge's conclusion that a contrived and impermissibly suggestive confrontation had not taken place between the defendant and the victim-witness. Accordingly, the judge properly denied a motion to suppress an identification of the defendant as a participant in an armed robbery. We affirm the conviction of armed robbery while masked (G. L. c. 265, § 17).

The drama unfolded at 6:00 A.M., on December 7, 1985, when a masked man, armed with a double-barreled shotgun, burst in on Joy Rourke, who was starting her shift at a Cumberland Farms convenience store in Seekonk. The robber's target was the store safe, which he was unable to open. Equally unsuccessful with the cash register and a Jimmy Fund jar, he settled for modest but immediately gratifying booty: two cartons of cigarettes. While the robber went about his hapless enterprise (it consumed about four minutes), Rourke was able to observe a car waiting outside with an apparent accomplice behind the wheel. Rourke described the accomplice as having shoulder-length blond hair, blue eyes, no facial hair, and wearing a blue flannel shirt. The car she thought to be a burnt-orange, two-door Datsun carrying a Rhode Island plate with two letters and three digits. The digits, Rourke was reasonably certain, were 164.

On the following day two men, one of whom was the defendant Calhoun, were stopped by a Pawtucket police officer for running a red light. The patrolman who made the stop noticed the butt of what turned out to be a 12-gauge double-barreled shotgun in the front seat between the two men. Dissatisfied with Calhoun's explanations of what he and his sidekick were doing with the shotgun, the patrolman took the weapon and the car Calhoun was driving into police custody.

We now introduce two police officers named Tetreault, one from Seekonk and one from Pawtucket. Seekonk Tetreault spotted a teletype sent out by the Pawtucket police concerning the stop of a car with two white males and a shotgun in it. Seekonk Tetreault called Pawtucket Tetreault to tell him about the robbery at the Cumberland Farms store. Upon learning that the Pawtucket police had a picture of one of the occupants of the car that had been stopped, Seekonk picked up the photograph so that it might be displayed to Rourke in a photo array. She was unable to identify

any of the six pictures laid out together before her as that of one of the robbers. The attempted photographic identification occurred December 9, 1985, two days after the robbery.

On the morning of December 10, 1985, Seekonk Tetreault arranged with his Pawtucket namesake to have Rourke examine the shotgun which the Pawtucket police had confiscated. For that purpose she travelled later the same day to the Pawtucket police station with Seekonk Tetreault. Rourke recognized the shotgun as the one which had been pointed at her "[b]y the front of it. It had a thing on the top and two holes, and the color of it."

While Rourke and the two Tetreaults were still in an office of the detective division at the police station, the defendant at 1:00 P.M. came marching into the Pawtucket police station to retrieve his car. His entrance was not accidental; he had arranged it the day before with another Pawtucket police officer. So far as Pawtucket Tetreault was concerned, the defendant's appearance was unexpected and alarming. Pawtucket Tetreault did not want the investigation contaminated by a one-on-one showup identification rather long after the occurrence of the crime. See and compare *Commonwealth* v. *Coy*, 10 Mass. App. Ct. 367, 371-372 (1980); *Commonwealth* v. *Gauthier*, 21 Mass. App. Ct. 585, 587 (1986). To make matters worse, the defendant was headed up to the detective division office. Pawtucket Tetreault quickly ushered Rourke and Seekonk Tetreault into an adjoining secretarial space. Any other escape route led inevitably down the stairs which Pawtucket Tetreault understood the defendant to be ascending. However, the upper part of the door which provided access between the main office and the secretarial office was glazed, as Pawtucket Tetreault knew, with glass that allowed a person from the secretarial space to see into the main space without being seen. From the secretarial office, Rourke was surprised by the appearance of the defendant in the neighboring office, talking to Pawtucket Tetreault. "That's him," she exclaimed to Seekonk Tetreault, who was also taken by surprise. Rourke claimed to be 100% certain that the defendant was the man in the getaway car. The defendant's arrest followed. Almost by way of postscript, Rourke identified the defendant's automobile, still in the police station lot, as the getaway car. It was not, as she had initially said, a burnt-orange Datsun, but a brown Ford Maverick. The car did, indeed, bear a license plate with two letters and three digits, but the digits were 265.

Whether a consequence of bungling or contrivance, the defendant Calhoun contends that he was identified under impermissibly suggestive circumstances and that his motion to suppress that identification should have been allowed. If the station house identification were bad, the in-court identification which followed would be tainted.

Although the ultimate question is whether the one-on-one identification was impermissibly suggestive, police contrivance or bungling in producing a confrontation identification may be a factor. This is because inherent in

the idea of confrontation is calculation or arrangement on the part of the government authorities who produce the confrontation. *Commonwealth v. D'Ambra*, 357 Mass. 260, 263 (1970). *Commonwealth v. Vasquez*, 11 Mass. App. Ct. 261, 266 (1981). Accidental encounters between a witness and a suspect, thus, are tolerated because of the absence of deliberate government machinations in bringing about the face-to-face meeting. *Commonwealth v. Walker*, 370 Mass. 548, 564-565, cert. denied, 429 U.S. 943 (1976). *Commonwealth v. Schleiff*, 5 Mass. App. Ct. 665, 670-671 (1977). *Commonwealth v. Vasquez*, 11 Mass. App. Ct. at 267.

The motion judge's finding that Calhoun's exposure to Rourke in the police station was the product of chance, therefore, becomes dispositive. We accept the judge's subsidiary findings of fact in the absence of clear error. *Commonwealth v. Moon*, 380 Mass. 751, 756 (1980). *Commonwealth v. Melvin*, 399 Mass. 201, 204 (1987). *Commonwealth v. Vasquez, supra* at 264. With that deferential attitude, we have reviewed the record and have no difficulty in determining that the motion judge, who fully appreciated the issue, was warranted in finding that Calhoun's arrival in the police station was anticipated by neither the Pawtucket nor Seekonk Tetreault, and that the officer who had instructed Calhoun the previous day to come in for his car did not know and, indeed, could not have known that an identifying witness would be in the building the next day at the appointed hour. The arrangement to have Rourke go to the police station had not been made when Calhoun was invited in. Once Pawtucket Tetreault became aware that the defendant was in the station house, he was in a position to choreograph a face-to-face confrontation but acted, on a warranted sizing up of the facts, to keep victim and defendant apart.

He might have done better by standing between Rourke and the one-way glass or asking that Rourke face away from the door. That the viewing might have been prevented by quicker thinking does not, however, invalidate the judge's finding that the viewing was accidental. It is worth observing, in addition, that Rourke's pointing out Calhoun as the accomplice was spontaneous. There had been no prompting or suggestion from the police that a man associated with the robbery would be around. Rourke had no reason to think Calhoun was in custody (he was not) or a suspect. She did not know why he was in the station house and was frightened when she recognized him. The totality of the circumstances of the identification was not unduly suggestive. See *Stovall v. Denno*, 338 U.S. 293, 301-302 (1967); *Commonwealth v. Botelho*, 369 Mass. 860, 867-868 (1976); *Commonwealth v. Melvin*, 399 Mass. at 205.

*Judgment affirmed.*

*Nona E. Walker*, Committee for Public Counsel Services, for the defendant.

*Beth R. Levenson*, Assistant District Attorney, for the Commonwealth.