COMMONWEALTH vs. MAISI JONES.

Worcester. March 4, 1996. - July 1, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Identification. Constitutional Law,* Identification. *Due Process of Law,*
Identification. *Evidence,* Identification.

At a criminal trial the judge correctly concluded that an identification wit-
ness had two highly suggestive confrontations with the defendant before
trial, which neither the police nor the prosecution arranged nor was
defense counsel responsible to guard against, and that there was not
clear and convincing evidence that the witness's in-court identification
of the defendant had a source independent of those encounters. [105-106]
Discussion of cases considering the bases for the exclusion of evidence in
criminal proceedings, particularly eyewitness identification testimony
arguably tainted by a suggestive confrontation. [107-108]
At a criminal trial, an eyewitness's in-court identification of the defendant,
based solely on two highly suggestive courthouse encounters, was
properly excludable as unreliable based on common law principles of
fairness. [109-110]
In the circumstances of a criminal case, in which the evidence of the
defendant's participation in the crimes was not strong and where ap-
propriate instructions to the jury on honest but mistaken eyewitness
identification, even had they been given, would not have mitigated the
effect on the jury of an unreliable identification of the defendant based
on highly suggestive confrontations, a new trial was required. [106-107,
110-111]

INDICTMENTS found and returned in the Superior Court
Department on October 15, 1992.

The cases were tried before *James F. McHugh, III,* J.

The Supreme Judicial Court granted an application for
direct appellate review.

*Benjamin H. Keehn,* Committee for Public Counsel Ser-
vices, for the defendant.

*Patricia C. Smith,* Assistant District Attorney, for the Com-
monwealth.

WILKINS, J. We deal with the question of the admissibility
of an in-court identification of the defendant that (a) was

based on highly suggestive confrontations with the defendant that neither the police nor the prosecution arranged and (b) was not based independently on the witness's original observations of the person whom she identified as the defendant. The trial judge, who considered the admissibility of the identification evidence by holding a voir dire during trial, ruled that, because the Commonwealth did not arrange the visual encounters between the witness and the defendant, principles of due process requiring the suppression of identifications based on unnecessarily suggestive encounters were inapplicable. He, therefore, denied the defendant's motion to suppress the witness's identification. The jury found the defendant guilty of armed assault in a dwelling, armed robbery, and confining with intent to commit a felony. We granted the defendant's application for direct appellate review.

The defendant's appeal is based solely on the denial of his motion to suppress. The Commonwealth argues that the witness's identification evidence was properly admitted for the reasons that the judge stated. The Commonwealth further asserts that the judge erred in concluding (1) that the in-court identification lacked a basis independent of the suggestive confrontations and (2) that defense counsel was not responsible because he did not guard against the suggestive encounters. The Commonwealth also argues that any error in the admission of the challenged identification evidence was harmless beyond a reasonable doubt.

The jury could have found the following facts. Late in the afternoon of May 28, 1992, two Vietnamese men and two African-American men, young and armed, forcibly entered the residence of the victim in Fitchburg. One intruder ordered the victim to lie face down on the floor, tied her up, and put a blanket over her head. Later the blanket slipped off, and from the floor she briefly saw one of the black men. The intruders took various items from the victim's residence.

Three hours after the incident, based on a tip, the police stopped a vehicle as it was leaving the parking lot of a Super 8 Motel in Leominster. There were three Vietnamese men in the vehicle. The victim, brought to the scene, identified two of the men, Cuong Ve and Du Le, as the Vietnamese men

who were involved in the incident.[1] Cuong Ve and Du Le testified that the defendant was not one of the two black men who had participated in the crimes. The victim also identified valuables taken from her home that were found in a stolen vehicle parked in the motel parking lot. On the following day, the victim identified the defendant's photograph in an array that the police showed her. At trial she identified the defendant as the person whom she saw when the blanket slipped off her head.

There was evidence that on May 28, 1992, the two Vietnamese men who had committed the crimes had stayed in room 216 at the Super 8 Motel in Leominster. Two teenage girls, runaways, had been in the motel room occupied by the Vietnamese men. They had seen two black men there in the company of the Vietnamese men. At trial one of these girls identified the defendant as one of the black men who had come to the motel where the Vietnamese had stayed. The other girl was unable to identify the defendant as a black man whom she had seen at the motel but testified that the defendant was the same size as one of them.

The issue in this case arises from the Commonwealth's introduction of the identification testimony of Krystal LeBlanc, who worked as an assistant manager at the Super 8 Motel in Leominster. She testified that between 3:30 P.M. and 4:30 P.M. on May 28, she saw the defendant in the company of Vietnamese men at the Leominster motel.

We now summarize the judge's findings of fact that led to the denial of the defendant's motion to suppress the testimony of Krystal LeBlanc. In many places, we quote the findings verbatim, making such corrections in the judge's dictated findings as the record plainly permits. "On the evening of May 28th, 1992, the witness, Krystal LeBlanc, was on duty in the Super 8 Motel in [Leominster] where she customarily worked as an assistant manager at the register. At some point during the afternoon, she saw a black man come into the lobby of that motel. He spent about a minute in the lobby walking from the front door to the elevator, and he disappeared into the elevator and reemerged about 10 minutes thereafter. He went back outside through the lobby and got into a car and drove away. The total time that Ms. LeBlanc

---

[1]Each of these men pleaded guilty to offenses committed in the break-in.

observed that person was about three minutes. At the time of her observation, there was no event then transpiring at the motel to draw her attention to him in any particularized way. The motel lighting and other conditions were adequate, however, to give her an opportunity to see him."

Three months later, LeBlanc was summoned by counsel for a codefendant to attend a probable cause hearing in the Fitchburg District Court. She arrived there, found defense counsel for the codefendant, and spoke with him. "She, for one reason or another, wound up sitting in a courtroom in the [Fitchburg] District Court." At some point, the defendant and a codefendant, Du Le, were in the courtroom handcuffed and shackled together. LeBlanc had the opportunity to watch them for more than an hour. There was no other African-American man in the courtroom who was in handcuffs or under any visible restraints.

"At no time while she was in the [Fitchburg] courthouse did Ms. LeBlanc have any contact with the district attorney or police officials, and neither the district attorney nor the police in any way, shape or form orchestrated, planned, assisted in facilitating, or otherwise participated in the observations that Ms. LeBlanc made of the defendant and Mr. Du Le on [this] occasion."

In the first week of February (the month of the trial), "LeBlanc was summonsed [by the Commonwealth] to this court in connection with a suppression hearing . . . in courtroom 18." The only means of entry to courtroom 18 is to take a person in custody down a hallway past anybody who happens to be sitting in the hall or waiting to testify in a proceeding.

"LeBlanc was seated in the hallway on two occasions when she saw the defendant, Mr. Jones, again shackled to Mr. Du Le, brought into the courtroom. Once again the district attorney did not tell her to sit there. The district attorney did not point out to her anybody [whom] she should look at. The district attorney did not facilitate, attempt to facilitate, aid or participate in assisting in any identification or procedures or opportunities for observation that Ms. LeBlanc had under those circumstances. Once again, however, the defendant, Mr. Jones, was the only black person in shackles that she saw that day, and once again, Mr. Jones was shackled to Mr. Le, a Vietnamese person." When LeBlanc testified at the suppression hearing, she saw Le and Jones sitting at counsel table,

not in shackles, but clearly the object of the courtroom proceeding.

Both the confrontation at the Fitchburg District Court and the confrontation at the Worcester courthouse in the first week of February "were accidental in the sense that the Commonwealth played no part in arranging or assisting in arranging those encounters. They were not in sum and in essence confrontations at all as that term is used as a term of art in decided cases."

The judge then made the following rulings of law (which we have adjusted with minor editing of his dictated rulings). "The defendant has the initial burden of proving, by a preponderance of the evidence, that a confrontation is unnecessarily suggestive and thus violated his right to due process. [If] that occurs, then that particular identification or confrontation . . . is suppressed, and the Commonwealth, in addition, is permitted to introduce at trial evidence of other identifications, such as an in-court identification, only if it proves by clear and convincing evidence that the other identification has a basis.

"I add, perhaps as a footnote, that the Commonwealth has not yet adopted the *Biggers*[2] and *Brathwaite*[3] test that permits introduction of a suggestive identification if that identification was nonetheless reliable. I put that consideration entirely to one side as it has played no role in the decision I am about to make.

"[F]or there to be a confrontation, the government must have played some role in arranging it. If there is no government participation in arranging an accidental or other encounter, then the entire line of analysis flowing from *Stovall*[4] does not apply. Cases standing for that proposition include *Commonwealth* v. *Otsuki*, 411 Mass. 218, 234 (1991); *Commonwealth* v. *Paszko*, 391 Mass. 164, 172 (1984); *Commonwealth* v. *D'Ambra*, 357 Mass. 260, 263 (1970); *Commonwealth* v. *Calhoun*, 28 Mass. App. Ct. 949, 951 (1990);

---

[2]*Neil* v. *Biggers*, 409 U.S. 188 (1972).

[3]*Manson* v. *Brathwaite*, 432 U.S. 98 (1977).

[4]*Stovall* v. *Denno*, 388 U.S. 293 (1967). We note that, in its *Stovall* opinion, the Supreme Court recognized that a particular confrontation might be "so unnecessarily suggestive and conducive to irreparable mistaken identification [of the defendant] that he was denied due process of law." *Id.* at 302.

*Commonwealth* v. *Currier*, 15 Mass. App. Ct. 929, 930 (1983).[5]

"Here, as I found, the Commonwealth did not participate in any of the viewings that Ms. LeBlanc had of the defendant. Consequently, the defendant's motion must be denied.

"If, however, I am wrong in that, if I have misread those cases or misapprehended the doctrine or if the court deems it appropriate to reexamine that issue, and if, therefore, a question arises as to whether or not the Commonwealth has shown by clear and convincing evidence that there is an independent basis for the in-court identification by Ms. LeBlanc of this defendant, I find and conclude that the Commonwealth has not satisfied its burden of showing by clear and convincing evidence an independent basis for identification. My basis for [so] concluding is that the initial opportunity she had to observe this man was brief; it was under circumstances where her attention was not directed to him in any focus[ed] or meaningful fashion. It was at a time when she was simply going about her routine duties in the motel. We can infer, and I

---

[5]In *Commonwealth* v. *Otsuki*, 411 Mass. 218, 234 (1991), citing *Commonwealth* v. *D'Ambra*, 357 Mass. 260, 263 (1970), the court said that "[a]n accidental confrontation, when the police make no attempt to elicit an improper identification [and '[t]here being no evidence of any improper police activity'], is permissible." In *Commonwealth* v. *Calhoun*, 28 Mass. App. Ct. 949 (1990), the court said that "[a]ccidental encounters between a witness and a suspect, thus, are tolerated because of the absence of deliberate government machinations in bringing about the face-to-face meeting." *Id.* at 951. The court also said that "the ultimate question is whether the one-on-one identification was impermissibly suggestive" and that "police contrivance or bungling" in producing a confrontation or identification may be a factor. *Id.* at 950. The court concluded that the encounter was not unduly suggestive. *Id.* at 951. The court held in *Commonwealth* v. *Currier*, 15 Mass. App. Ct. 929, 929-930 (1983), that due process does not require suppression when the encounter was arranged by a friend of the victim and hence there was no improper action by the State.

It is generally believed that the word confrontation in the context of an unduly or unnecessarily suggestive encounter between witness and suspect involves a calculated move by the police to bring about the encounter. See *Commonwealth* v. *Walker*, 370 Mass. 548, 564-565, cert. denied, 429 U.S. 943 (1976). Thus accidental encounters not brought about by police conduct have been held not to raise due process considerations even if the encounter occurs in a suggestive setting. *Commonwealth* v. *Leaster*, 362 Mass. 407, 410 (1972). *Commonwealth* v. *Smith*, 12 Mass. App. Ct. 667, 673 (1981). K.B. Smith, Criminal Practice and Procedure § 451 (2d ed. 1983 & Supp. 1996).

do infer, and therefore find many people walk back and forth through that corridor on a daily basis. Moreover, the opportunity she had to observe the defendant and the observations she made of the defendant at the [Fitchburg] courthouse, even though not arranged by the district attorney, clearly was suggestive of the fact that this was an individual who had been arrested for these offenses.

"All of the circumstances that I have detailed above lead to that conclusion that it was highly suggestive. That suggestion was highly reinforced by the observation she made of the defendant when the defendant was brought into the courtroom for the suppression hearing. Under those circumstances, I simply am unable to find by clear and convincing evidence that the original observation of the defendant is what carries Ms. LeBlanc through and enables her to make an identification of the defendant in court today."

We too reject the Commonwealth's argument that the evidence was clear and convincing that LeBlanc's in-court identification had a source independent of what the Commonwealth implicitly concedes were two highly suggestive pretrial encounters. The judge's conclusion that there was no independent source was based on his findings that: LeBlanc's opportunity to see the defendant at the Leominster motel was brief in circumstances that did not focus her attention on him; the initial encounter in the Fitchburg District Court occurred three months later, where LeBlanc saw the defendant handcuffed and shackled to Du Le, a Vietnamese codefendant; LeBlanc saw the defendant, the only African-American man in the courtroom who was under restraint, for more than one hour; the defendant's presence there was clearly suggestive of the fact that he had been arrested for the offenses about which LeBlanc knew; in the second suggestive encounter, Le Blanc, summoned to testify, saw the defendant again shackled to Du Le and obviously an object of courtroom proceedings; and the second encounter highly reinforced the suggestiveness of the first encounter. We cannot fairly conclude that the judge's subsidiary findings of fact, which are not clearly erroneous, require an ultimate conclusion that the evidence is clear and convincing that LeBlanc's in-court identification of the defendant would be based on something other than the suggestive confrontations. See *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980).

The Commonwealth's claim that defense counsel should be held at least partially responsible for the suggestive confrontations lacks merit. There is nothing to indicate that counsel knew that a codefendant had summoned LeBlanc to the probable cause hearing in the Fitchburg District Court. Contrast *Commonwealth* v. *Cincotta*, 379 Mass. 391, 395 (1979) (counsel aware of, or having reason to anticipate, possible suggestive encounter has responsibility to act to prevent it). The second encounter also occurred because of the physical layout of the courthouse and a summons issued by the Commonwealth, circumstances that should not be laid at the defendant's doorstep.

There is no basis for concluding that any error in the admission of LeBlanc's testimony was harmless beyond a reasonable doubt (if the error was constitutionally based) or not prejudicial (if the error was not constitutionally based). The victim's identification of the defendant was based on very brief opportunities to see him after the blanket came off her head. There was no other eyewitness to the crimes who identified the defendant as a participant.[6] There was no physical evidence that tied the defendant to the crimes. LeBlanc's testimony provided a temporally significant link between the confessed participants in the crime and the defendant. The only other link was the testimony of the runaway teenage girls. LeBlanc's testimony, that of an impartial witness disassociated from the activities of the occupants of the Leominster motel room, could well have been a crucial element in the jury's deliberations. We cannot say with confidence that the admission of LeBlanc's testimony did not contribute to the guilty verdicts.

We come then to the question whether LeBlanc's identification of the defendant, based solely on highly suggestive courthouse encounters with the defendant, was properly presented to the jury for their consideration. As we noted earlier (see note 5 above), our cases have stated or implied that where the Commonwealth did not arrange for a suggestive encounter, an identification, even if based solely on such an encounter, need not be excluded from evidence. We accept the judge's conclusion that the Commonwealth did not

---

[6]The two Vietnamese men who confessed to the crimes denied that the defendant was a participant in any part of the crimes.

orchestrate the encounters.[7] We have not previously had a case in which the question has been so squarely presented, based on a judge's findings, that an in-court identification was the product solely of a highly suggestive confrontation.

In spite of the constitutional right to a trial by jury, the law permits, sometimes requires, a trial judge to keep evidence from a jury. Although some exclusions are based on constitutional considerations, many are founded on the common law or statute. A criminal defendant's admissions or confession to the police are inadmissible if Miranda warnings were not furnished (*Miranda* v. *Arizona*, 384 U.S. 436 [1966]) or if the defendant's statements were not made voluntarily and knowingly (*Commonwealth* v. *Luna*, 418 Mass. 749, 751 [1994]). The common law gives a trial judge discretion to exclude evidence that is more prejudicial than probative (*Nally* v. *Volkswagen of Am., Inc.*, 405 Mass. 191, 197 [1989]), and to exclude an expert's proffered opinion if the process or theory underlying the expert's opinion lacks reliability (*Commonwealth* v. *Lanigan*, 419 Mass. 15, 26 [1994]). We have held that testimony enhanced by hypnosis lacks reliability and is inadmissible against a criminal defendant. See *Commonwealth* v. *Kater*, 388 Mass. 519, 527-528 (1983), *S.C.*, 394 Mass. 531 (1985), 409 Mass. 433 (1991), 412 Mass. 800 (1992). There are numerous statutory (see, e.g., G. L. c. 233, §§ 20, 20A, 20B, 20J, 21B [1994 ed.] and G. L. c. 112, § 135A [1994 ed.]) and common law privileges[8] that, as a matter of policy, keep relevant and sometimes important evidence from a trier of fact. The Legislature has prescribed standards for the competency of witnesses to testify. G. L. c. 233, § 20 (1994 ed.). See *Commonwealth* v. *Brusgulis*, 398 Mass. 325, 329-330 (1986) (judge has wide discretion in determining competency). It is apparent that neither

---

[7]The Commonwealth had no demonstrated knowledge that LeBlanc would be summoned to the District Court where the first encounter occurred. The Commonwealth is not wholly free from responsibility for the second encounter. The Commonwealth did not orchestrate it, but it provided the opportunity for such an encounter by summoning LeBlanc to appear to testify in circumstances in which she could be expected to see the defendant in handcuffs, shackled to a Vietnamese codefendant, as he was taken through the courthouse corridor to the courtroom.

[8]See, e.g., *Commonwealth* v. *Snyder*, 413 Mass. 521, 533 (1992) (limited privilege not to disclose identity of an informant); *Commonwealth* v. *O'Brien*, 377 Mass. 772, 775 (1979) (attorney-client privilege).

constitutional considerations nor the presence of State action (besides the use of the evidence itself) are essential preconditions for a determination that certain relevant evidence should be kept from the trier of fact.

Some courts have held that, if the police were not responsible for a suggestive confrontation between a witness and a defendant, no State action was involved, and hence there could be no violation of Federal constitutional rights and need be no suppression. See, e.g., *Reese* v. *Fulcomer*, 946 F.2d 247, 259 (3d Cir. 1991), cert. denied, 503 U.S. 988 (1992); *Kimble* v. *State*, 539 P.2d 73, 77 (Alaska 1975); *Hill* v. *United States*, 367 A.2d 110, 115 (D.C. 1976); *State* v. *Pailon*, 590 A.2d 858, 863 (R.I. 1991). There are, however, cases in which, although a State actor did not cause a highly suggestive confrontation, the court considered the witness's testimony to be so unreliable as to require exclusion of identification testimony as a matter of fairness on due process grounds. See *United States* v. *Bouthot*, 878 F.2d 1506, 1516 (1st Cir. 1989) ("federal courts should scrutinize all suggestive identification procedures, not just those orchestrated by the police, to determine if they would sufficiently taint the trial so as to deprive the defendant of due process"); *Thigpen* v. *Cory*, 804 F.2d 893, 895 (6th Cir. 1986), cert. denied sub nom. *Foltz* v. *Thigpen*, 482 U.S. 918 (1987) ("only the effects of, rather than the causes for, preidentification encounters should be determinative of whether the confrontations were unduly suggestive"); *State* v. *McCord*, 259 N.J. Super. 217, 224 (1992). Cf. *Kirby* v. *Illinois*, 406 U.S. 682, 690-691 (1972) ("it is always necessary to 'scrutinize *any* pretrial confrontation' " for undue suggestiveness conducive to irreparable mistaken identification); *People* v. *Blackman*, 110 A.D.2d 596 (N.Y. 1985) (based on *People* v. *Adams*, 53 N.Y.2d 241 [1981], approving the holding of a hearing on reliability where confrontation was caused by private citizen). In *State* v. *Holliman*, 214 Conn. 38, 46 (1990), the court concluded that, even if no constitutional underpinning existed for exclusion of an identification based on an unnecessarily suggestive confrontation, the same considerations that are relevant in a constitutionally based challenge to admission of an identification should be involved in deciding the admissibility of an identification arguably tainted by a civilian-conducted suggestive confrontation.

If a witness is involved in a highly suggestive confrontation with a defendant and that witness's in-court identification of the defendant is not shown to have a basis independent of that confrontation, the admissibility of the witness's proposed testimony identifying the defendant should not turn on whether government agents had a hand in causing the confrontation. The evidence would be equally unreliable in each instance. Although this court was divided in *Commonwealth* v. *Johnson,* 420 Mass. 458 (1995), involving the admissibility of identification testimony, all the Justices regarded as critical to the suppression question the reliability of the witness's identification testimony offered after an unnecessarily suggestive showup. See *id*. at 464-469; *id*. at 474-477 (Nolan, J., dissenting). This case presents no public safety consideration making necessary a form of one-to-one confrontation such as occurred in *Commonwealth* v. *Austin,* 421 Mass. 357 (1995). Cf. *State* v. *Holliman, supra* at 48 (prompt one-to-one confrontation arranged by private citizen was "necessary and permissible").

Eyewitness identification of a person whom the witness had never seen before the crime or other incident presents a substantial risk of misidentification and increases the chance of a conviction of an innocent defendant. In *Commonwealth* v. *Johnson, supra,* we noted that, "the vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification." *Id*. at 466, quoting *United States* v. *Wade,* 388 U.S. 218, 228 (1967), and citing numerous authorities. *Id*. at 467 & n.9. The Supreme Court has deemphasized the role of deterring police misconduct in the analysis of suggestive confrontations to focus more on nonreliability as the justification for the exclusion of an identification that may have been influenced by a suggestive confrontation. See *Neil* v. *Biggers,* 409 U.S. 188, 198 (1972) ("[i]t is the likelihood of misidentification which violates a defendant's right to due process, and it is this which was the basis of the exclusion of evidence"); *Manson* v. *Brathwaite,* 432 U.S. 98, 111-112 (1977).

We need not base our decision on constitutional grounds. Common law principles of fairness dictate that an unreliable identification arising from the especially suggestive circumstances of this case should not be admitted. This encounter was not a casual confrontation in neutral surroundings, such

as occur through the media. See, e.g., *Commonwealth* v. *Colon-Cruz,* 408 Mass. 533, 542 (1990). LeBlanc saw the defendant in custody in a courtroom in connection with charges that she knew were related to a robbery committed by Vietnamese men and two African-Americans. The defendant was shackled to one Vietnamese man whom she had seen at the Leominster motel. Implicitly, the circumstances indicated that the prosecution thought the defendant had been involved in the crimes.

This is not a case in which cross-examination and a judge's jury instruction concerning eyewitness identification testimony can fairly protect the defendant from the unreliability of LeBlanc's identification. We have indicated that, on request, specific instructions concerning eyewitness identification are often necessary. See *Commonwealth* v. *Rodriguez,* 378 Mass. 296, 302 (1979), endorsing the model instructions from *United States* v. *Telfaire,* 469 F.2d 552, 558-559 (D.C. Cir. 1972), modified as indicated in *Commonwealth* v. *Cuffie,* 414 Mass. 632, 640 (1993).[9] Subsequently, we have indicated that, in certain instances, on request, a jury should be instructed that a witness may have been mistaken and that it was possible that the witness may have made an honest but mistaken identification. *Commonwealth* v. *Pressley,* 390 Mass. 617, 620 (1983). It does not appear that the defendant requested a modified *Rodriguez* instruction, and the judge's charge did not include one adapted to the facts of this case. Such an instruction would have been relevant to the victim's identifica-

---

[9]One factor in determining the reliability of an identification may be the accuracy of the witness's prior description of the criminal. See *Commonwealth* v. *Cuffie,* 414 Mass. 632, 641 (1993) ("You may take into account any occasions in which the witness . . . made an identification that was inconsistent with his identification at trial"). See also *Neil* v. *Biggers,* 409 U.S. 188, 199 (1972). In this case, the police never obtained a pretrial statement from LeBlanc describing the black man who passed through the motel lobby. Thus, the jury had no evidence that permitted them to compare the defendant's appearance against what LeBlanc told the police.

The instruction approved in *Commonwealth* v. *Cuffie, supra,* indicates that the jury should be told that they could "take into account . . . the strength of the identification." We would not object to the omission of that provision from a jury charge because it may suggest that the confidence with which a person makes an identification is a valid indicator of the accuracy of the recollection. There is doubt as to the soundness of that assumption. See *State* v. *Long,* 721 P.2d 483, 490 (Utah 1986). See also *State* v. *Ramirez,* 817 P.2d 774, 781 (Utah 1991).

tion testimony as well as to that of LeBlanc. Even a modified *Rodriguez* charge would not, however, have mitigated the effect of the admission of an eyewitness identification that the judge had concluded was based on highly suggestive confrontations and was not shown to have a reliable basis independent of these confrontations. LeBlanc's identification of the defendant had the potential of leading the jury to a different conclusion than they would have reached without it. No instruction from a judge could have confidently guarded against that risk.

The judgments are reversed and the verdicts set aside; the order denying the motion to suppress is vacated and an order shall be entered allowing the motion to suppress LeBlanc's identification testimony; and the case is remanded for a new trial.

*So ordered.*