COMMONWEALTH *vs.* HUAN LIEU & another.[1]

No. 99-P-49.

Essex. May 10, 2000. - October 4, 2000.

Present: KASS, LAURENCE, & DUFFLY, JJ.

*Identification. Evidence,* Identification. *Practice, Criminal,* Motion to suppress, Instructions to jury, Presumption of innocence.

A Superior Court judge correctly concluded that a witness's accidental courthouse hallway encounter with a defendant, who was not restrained or in custody and whom the witness then identified, was not impermissively suggestive, and the judge correctly denied the defendant's motion to suppress the out-of-court identification. [164-165]

At a criminal trial, the judge's instructions to the jury on the presumption of innocence were adequate. [165-166]

INDICTMENTS found and returned in the Superior Court Department on January 22, 1997.

A pretrial motion to suppress identifications was heard by *Diane M. Kottmyer,* J., and the cases were tried before *Richard E. Welch, III,* J.

*Carlo A. Obligato,* Committee for Public Counsel Services, for Mao Keo.

*Sean T. Delaney* for Huan Lieu.

*Robert J. Bender,* Assistant District Attorney, for the Commonwealth.

KASS, J. Huan Lieu, Mao Keo, and Ngek You[2] were tried together before a jury in Superior Court and convicted of possession of a firearm in violation of G. L. c. 269, § 10(*a*), assault with intent to murder, and assault and battery by means of a dangerous weapon. On appeal, Lieu contends that his motion to

---

[1] Mao Keo.

[2] You's liability for the gun charge was premised on constructive, rather than actual, possession; he was charged as an accessory after the fact to the other crimes. You does not appeal his convictions.

suppress the victim's extrajudicial identification of him was erroneously denied, and Lieu and Keo both claim that the trial judge erred in instructing the jury on the presumption of innocence. We affirm.

1. *Facts.* The jury could have found as follows: On November 17, 1996, at about 7:00 P.M., Mao Keo, Huan Lieu, Ngek You, and another man approached Tarith Mon, who was standing outside a shop on Franklin Street near the intersection with Western Avenue, in Lynn. Keo said to Mon, "What's up?" Mon answered, "What's up?" In street talk that was a hostile response. Keo then pulled out a revolver and Lieu a semiautomatic. To that Mon said, "You going to shoot, shoot." Keo answered with gunfire. Keo's fusillade hit Mon in the stomach and Lieu, who had been fidgeting with the slide on his semiautomatic, in the foot. A neighborhood resident heard the shots and phoned the police, who arrived on the scene and obtained a description of the assailants (they were dressed distinctively in red and black) and their getaway car. Within a short time, the police stopped a car matching the getaway vehicle occupied by four men who also fit the bill. That night, the police recovered two handguns that the defendants had deposited at a home on Mall Street just before being stopped.

Next day, at the hospital to which he had been brought, Mon told police that he knew Keo and that the other gun-wielding individual seemed familiar: if he saw pictures of the men, he would recognize them. A Lynn police detective, Robert Condon, showed Mon several photo arrays from which Mon picked out Keo, but was unable to identify Lieu or You.

2. *Extrajudicial identification of Huan Lieu.* The judge who heard the motion to suppress the pretrial identification of Lieu made careful findings of fact. We summarize them. On December 10, 1996, Mon arrived at the Lynn District Court to testify at a probable cause hearing as to Keo. While waiting in the hallway outside the courtroom, he recognized a man standing among a group of Asian men to be the man who, on November 17, had the semiautomatic. Mon pointed out the man to Seng Tith, who had accompanied him to the courthouse, and Tith responded he knew the man as "Go." (Mon had been told by a friend while in the hospital that a man named "Go" was the other person with a gun.) Mon reported the sighting to the assistant district attorney, who asked Detective Condon to accompany Mon to see if "Go" was still in the courthouse. By

then the probable cause hearing, had been continued to December 17, and Lieu was gone. Later that day, at the police station, Mon again was unable to identify Lieu from a photo array.

On December 17, Mon arrived for the rescheduled probable cause hearing and once more was standing outside the courtroom when Detective Condon approached and asked if he saw the second shooter among those milling about. Detective Condon had seen Lieu in the courthouse. Mon pointed at a man who was standing with a group of other Asian men on a stair landing and said, "[T]hat's Go, he's down there, the one that had the automatic." Detective Condon went to speak with Lieu, returned, and asked Mon if the man he had just spoken with was the one he had pointed out; Mon said that he was.

Lieu contends that it was error for the judge to deny his motion to suppress Mon's identification of him. There is ample record evidence to support the motion judge's findings of fact, which we accept absent clear error. *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980). No evidence suggests that the December 10 encounter was anything but accidental. Cf. *Commonwealth* v. *Charles*, 4 Mass. App. Ct. 853, 853 (1976). The circumstances of the encounter are unlike the accidental confrontation that was suppressed in *Commonwealth* v. *Jones*, 423 Mass. 99 (1996). In *Jones*, the witness identified the defendant, the only member of a racial minority present, after observing him handcuffed and shackled. Here, Lieu was in the presence of other Asian men when Mon spotted him in the courthouse. He was not in custody or restrained, or otherwise presented in circumstances that might suggest the police suspected him of criminal conduct. See, e.g., *Commonwealth* v. *Schlieff*, 5 Mass. App. Ct. 665, 670-671 (1977) (admitting identification where witnesses recognized defendant among a group of bystanders); *Commonwealth* v. *Perry*, 15 Mass. App. Ct. 932, 933 (1983) (same); *Commonwealth* v. *Cole*, 15 Mass. App. Ct. 946, 946-947 (1983) (same). In both the *Perry* and *Cole* cases, the encounters were accidental. Here, the Commonwealth anticipated the encounter but that does not make the circumstances of the identification suggestive. Mon still had to find Lieu in a crowd that included other Asians and Lieu was not restrained or in custody.

That Mon's friend mentioned that the man Mon pointed out on December 10 was "Go" and that Mon had previously heard

that "Go" had a gun during the November 17 incident, does not render the circumstances under which Mon made the identification impermissibly suggestive. An identification need not be suppressed because the witness later learned confirmatory facts. See *Commonwealth* v. *Riley*, 26 Mass. App. Ct. 550, 555 (1988).

3. *Presumption of innocence instruction.* Lieu and Keo contend that the trial judge committed reversible error in failing to instruct the jury on the presumption of innocence.[3]

Although the instructions on the presumption of innocence are not constitutionally required, a judge "must, upon request, instruct the jury that the defendant is 'presumed to be innocent.' " *Commonwealth* v. *Drayton*, 386 Mass. 39, 46 (1982), quoting from *Commonwealth* v. *Madeiros*, 255 Mass. 304, 316 (1926), and citing *Commonwealth* v. *Anderson*, 245 Mass. 177 (1923).

The judge in this case did instruct the jury that "every person is presumed to be innocent until he is proved guilty and that the burden of proof is on the prosecutor." He further instructed the jury to "base your verdict upon the evidence . . . that you believe, that is the credible evidence, the evidence that you think is important, the material evidence," and to determine whether the Commonwealth proved "these particular facts against these particular individuals." "[T]he evidence," the judge instructed, "is the testimony of the witnesses, the exhibits and, also, as I will further instruct you, what your common sense tells you what the rational inference is from the testimony and the exhibits." The judge added, "Now, I am not talking about mere guesswork or speculation. You do not base your verdict upon guesswork or speculation. But you can base it upon rational, reasonable inferences."

As in *Commonwealth* v. *Drayton*, *supra* at 47, the judge's instructions discussed "the Commonwealth's burden of proof and the jury's responsibility to decide the case on the evidence alone, and thus amply fulfilled the protective purposes of a specific instruction on the presumption of innocence." See *Commonwealth* v. *Boyd*, 367 Mass. 169, 188 (1975). Viewing the charge in its entirety, we conclude that the judge's instructions

[3]Neither Keo nor Lieu objected to the trial judge's instructions. Counsel for Ngek You, however, inquired whether the judge had so instructed the jury. As the issue was "fairly presented to the trial judge in time for him to take what action he saw as necessary," *Commonwealth* v. *Seminara*, 20 Mass. App. Ct. 789, 795 n.4 (1985), the issue is preserved for appellate review.

on presumption of innocence were adequate. It is, to be sure, the better practice to begin a charge with a simple statement that the indictment is no more than the government's complaint, that the indictment has no force as evidence, that the defendant is presumed to be innocent, and that it is the prosecution's burden to prove each element of the offense charged. See *Commonwealth* v. *DeFrancesco*, 248 Mass. 9, 13-14 (1924); *Commonwealth* v. *Madeiros*, 255 Mass. at 315-316; *Commonwealth* v. *Boyd*, 367 Mass. at 187-189; *Commonwealth* v. *McGahee*, 393 Mass. 743, 750-753 (1985); *Commonwealth* v. *Wills*, 398 Mass. 768, 781 (1986); *Commonwealth* v. *Blanchette*, 409 Mass. 99, 104-106 (1991). Cf. *Commonwealth* v. *Anderson*, 245 Mass. at 188-190 (reversible error not to mention the presumption upon request); *Commonwealth* v. *Viera*, 42 Mass. App. Ct. 916, 917-918 (1997) (reversible error to mention the presumption by name only, without instructing the jury on the meaning of the phrase). For model instructions on the presumption of innocence, see those set out in 1 McIntyre et al., Massachusetts Superior Court Criminal Practice Jury Instructions § 1.2 (1999), or in Instruction 2.04 of the Model Jury Instructions for Use in the District Court (1988).

*Judgments affirmed.*